# United States Court of Appeals for the Federal Circuit

---

**DEACERO S.A. DE C.V., DEACERO USA, INC.,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES, ARCELORMITTAL USA, LLC, GERDAU AMERISTEEL U.S. INC., NUCOR CORPORATION,**
*Defendants-Appellants*

**EVRAZ ROCKY MOUNTAIN STEEL,**
*Defendant*

---

2015-1362, 2015-1363, 2015-1367

---

Appeals from the United States Court of International Trade in No. 1:12-cv-00345-RWG, Senior Judge Richard W. Goldberg.

---

Decided: April 5, 2016

---

JAY CHARLES CAMPBELL, White & Case LLP, Washington, DC, argued for plaintiffs-appellees. Also represented by DAVID BOND, TING-TING KAO.

ALEXANDER V. SVERDLOV, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant

United States. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., REGINALD T. BLADES, JR.; DAVID W. RICHARDSON, Office of the Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce, Washington, DC.

KATHLEEN CANNON, Kelley Drye & Warren LLP, Washington, DC, argued for defendants-appellants ArcelorMittal USA, LLC, Gerdau Ameristeel U.S. Inc. Also represented by ROBERT ALAN LUBERDA, PAUL C. ROSENTHAL, DAVID C. SMITH, JR.

DANIEL B. PICKARD, Wiley Rein, LLP, Washington, DC, for defendant-appellant Nucor Corporation. Also represented by DERICK HOLT, MAUREEN E. THORSON.

————————————

Before REYNA, BRYSON, and CHEN, *Circuit Judges.*

REYNA, *Circuit Judge.*

Appellants appeal a judgment of the U.S. Court of International Trade ("Trade Court") affirming the U.S. Department of Commerce's ("Commerce") remand determination on certain small-diameter steel wire rod. Commerce initiated a minor alteration anti-circumvention inquiry and determined that certain small-diameter steel wire rod was included within the scope of the subject antidumping duty order. On appeal, the Trade Court concluded that Commerce erred in its minor alterations analysis and remanded to Commerce. On remand, Commerce changed its determination and found under protest the steel wire rod excluded from the scope of the antidumping duty order. The Trade Court affirmed, and Appellants appeal. We hold that Commerce's initial minor alteration anti-circumvention determination was in accordance with law and supported by substantial evidence. As such, the judgment of the Trade Court is *reversed*.

BACKGROUND

Antidumping Duty Order on Steel Wire Rod

On August 31, 2001, U.S. steel wire rod producers filed an antidumping petition against imports of steel wire rod from Mexico and several other countries. J.A. 225. Steel wire rod is a hot-rolled, intermediate steel product with a round cross-section. It is sold in wound coils and used to manufacture steel wire and downstream products made with steel wire. The standard specification for steel wire rod, ASTM A510, lists nominal sizes for steel wire rod ranging from 5.5 mm to 19 mm, each with a tolerance of plus or minus 0.40 mm. J.A. 234, 237.

The petition set 5.00 mm as the minimum diameter of the steel wire rod covered by the scope of the petition:

> For purposes of this investigation, the merchandise covered by these investigations is certain hot-rolled, carbon steel and alloy steel products, in coils, of approximately round cross section, between 5.00 mm (0.20 inch) and 19.0 mm (0.75 inch), inclusive, in solid cross-sectional diameter.

J.A. 229. The petition noted that "[m]ost of the industrial quality wire rod is produced and sold in 7/32 inch (5.5 mm) diameter, which is also the smallest cross-sectional diameter that is hot-rolled in significant commercial quantities." J.A. 228.

On October 1, 2002, the International Trade Commission ("ITC") issued its final determination that a U.S. industry was materially injured by virtue of less-than-fair-value imports of certain steel wire rod from Brazil, Canada, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine. The ITC reiterated that the "like product" subject to the investigation was "certain hot-rolled

products of carbon steel and alloy steel, in coils, of approximately round cross section, 5.00 mm or more, but less than 19.00 mm, in solid cross-sectional diameter."[1] On October 15, 2002, the ITC notified Commerce of its final determination. J.A. 222, 3045.

On October 29, 2002, Commerce issued an antidumping duty order on steel wire rod from Brazil, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine. The duty order defined the scope as steel wire rod with a cross-sectional diameter of "5.00 mm or more, but less than 19.00 mm." J.A. 222. Non-individually investigated Mexican exporters were assigned a weighted-average margin of 20.11%.[2]

Deacero S.A.P.I. de C.V. and Deacero USA, Inc. (together, "Deacero") are Mexican manufacturers of steel wire rod and other steel products. Deacero was not individually investigated in the underlying antidumping duty investigation. As such, its imports of subject merchandise were made subject to the 20.11% "all-others" rate. After the duty order issued, Deacero invested in, manufactured, and ultimately imported into the United States steel wire rod within a diameter of 4.75 mm, 0.25 mm smaller than the steel wire rod subject to the duty order.

---

[1] *Carbon and Certain Alloy Steel Wire Rod from Brazil, Canada, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine*, Nos. 701-TA-417-421; 731-TA-953, 954, 956-959, 961, & 962, USITC 3546 (Oct. 1, 2002) (Final).

[2] *Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine*, 67 Fed. Reg. 65945, 65946–47 (Dep't Commerce Oct. 29, 2002).

Procedural History

On February 11, 2011, two groups of U.S. steel wire rod producers filed separate letters requesting that Commerce initiate a scope inquiry to determine whether steel wire rod with an actual diameter between 4.75 and 5.00 mm was within the scope of the antidumping duty order on steel wire rod from Mexico. Alternatively, they requested that Commerce initiate an anti-circumvention inquiry to determine whether 4.75 mm steel wire rod should be included within the scope of the antidumping duty order as either "minor alterations of merchandise" or "later-developed merchandise." 19 U.S.C. § 1677j(c)(1), (d)(1) (2006).

On May 31, 2011, Commerce instituted an anti-circumvention inquiry on steel wire rod between 4.75 and 5.00 mm. Commerce determined that 4.75 to 5.00 mm steel wire rod was a minor alteration of the subject merchandise and that its import into the United States constituted an affirmative circumvention of the duty order. J.A. 193. Commerce declined to initiate a circumvention inquiry as to whether 4.75 mm steel wire rod constituted a later-developed product because "such small diameter wire rod was commercially available prior to the issuance" of the duty order. J.A. 192. Deacero appealed. Commerce's later-developed product determination is not before us on appeal.

On September 30, 2013, the Trade Court remanded for reconsideration and redetermination. *Deacero S.A. de C.V. v. United States*, 942 F. Supp. 2d 1321, 1332 (Ct. Int'l Trade 2013). The Trade Court found that Commerce's affirmative circumvention determination was not supported by substantial evidence because 4.75 mm steel wire rod fell outside the literal scope of the duty order and was "commercially available" at the time of the original investigation. *Id.* at 1324. The Trade Court relied on *Wheatland* in determining that Commerce erred in ex-

panding the duty order to cover more than "insignificantly changed" merchandise. *Id.* at 1328–32 (citing and quoting *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1370 (Fed. Cir. 1998)). The Trade Court remanded and instructed Commerce to reconsider its affirmative circumvention determination and to "thoroughly explain how the record and relevant law supports that determination." *Id.* at 1332.

On January 28, 2014, Commerce changed course and issued under protest a redetermination of negative circumvention, reasoning that it had "no alternative" to determine otherwise after the Trade Court's decision. J.A. 137, 142. After another appeal, the Trade Court remanded again, instructing Commerce to "consider whether it wishes to revisit or elaborate on its finding that small-diameter wire rod was commercially available prior to issuance of the [subject antidumping duty order]." *Deacero S.A.P.I. de C.V. v. United States*, No. 12-00345, 36 Int'l Trade Rep. (BNA) 861, 2014 Ct. Intl. Trade LEXIS 99, at *21–22 (Ct. Int'l Trade Aug. 28, 2014). Commerce declined to revisit its findings. J.A. 172.

On December 22, 2014, the Trade Court affirmed the negative circumvention determination. *Deacero S.A.P.I. de C.V. v. United States*, No. 12-00345, 36 Int'l Trade Rep. (BNA) 1515, 2014 Ct. Intl. Trade LEXIS 159, at *2 (Ct. Int'l Trade Dec. 22, 2014). Observing that Commerce declined to revisit its findings, the Trade Court found that substantial evidence supports the negative circumvention determination as to 4.75 mm steel wire rod. *Id.*

The government, along with U.S. industry participants ArcelorMittal USA LLC, Gerdau Ameristeel U.S. Inc., and Nucor Corporation, appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(5) (2012).

## STANDARD OF REVIEW

We review Trade Court decisions de novo, applying the same standard used by the Trade Court when reviewing Commerce decisions. *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1373 (Fed. Cir. 2015) (citation omitted). Under that standard, we will uphold Commerce's determinations unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

Substantial evidence is "more than a mere scintilla" and amounts to what a "reasonable mind might accept as adequate to support a conclusion." *Downhole*, 776 F.3d at 1374 (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). Our review is limited to the record before Commerce in the particular administrative proceeding at issue and includes all "evidence that supports and detracts" from Commerce's conclusion. *Sango Int'l L.P. v. United States*, 567 F.3d 1356, 1362 (Fed. Cir. 2009). An agency finding may still be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence. *Downhole*, 776 F.3d at 1374 (citing *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).

## DISCUSSION

The government argues that Commerce's initial decision that Deacero's 4.75 mm steel wire rod was a minor alteration and that its imports circumvented the antidumping duty order was reasonable and supported by substantial evidence. According to the government, whether a good is within the literal scope of a duty order is not the inquiry, given that the purpose of the minor alterations subsection is to determine whether products not included in the literal scope of the duty order should be deemed covered by the scope of the duty order. The government notes that although the statute is silent on how Commerce should determine whether an alteration is

"minor," Commerce's practice has been to review five factors identified in the statute's legislative history when making this determination: (1) the overall physical characteristics of the product; (2) the expectations of the ultimate user; (3) the end use of the product; (4) channels of trade and advertising; and (5) the cost of modification relative to the value of the products at issue. *Nippon Steel Corp. v. United States*, 219 F.3d 1348, 1354 (Fed. Cir. 2000); *see also* S. Rep. No. 100-71 (1987). The government argues that requiring Commerce to consider commercial availability is not among the five factors.

The government asserts that it is immaterial that the merchandise at issue may have been commercially available somewhere in the world at the time the petition was filed because the subsection on minor alterations, 19 U.S.C. § 1677j(c), contains no reference to commercial availability. Imposing a requirement to consider commercial availability under § 1677j(c) would add a requirement to the statute that is not there, and would render superfluous the inquiry for later-developed merchandise under § 1677j(d).

The government argues that the evidence demonstrates that 4.75 mm steel wire rod was not being produced in Mexico or in the United States and was not commercially available at the time the petition was filed. J.A. 71–74, 136. The evidence further shows that after Commerce issued the order, Deacero began to produce and import into the United States 4.75 mm steel wire rod that met the five-factor test, including that it possessed the same physical characteristics and commercial uses as 5.00 mm steel wire rod.

Deacero counters that Commerce's initial anti-circumvention determination was not supported by substantial evidence. Commerce failed to account for the antidumping duty order's literal exclusion of small-diameter steel wire rod and ignored its own finding that

small-diameter steel wire rod was commercially available in Japan in 1998, roughly two years before the petition was filed. Deacero contends that the evidence indicates that small-diameter steel wire rod was well known at the time the petition was filed. Deacero asserts that the five factors addressed by Commerce only examine whether an alteration was *minor*—not whether subject merchandise was *altered* in the first place. By definition, merchandise that was well known but not included in the investigation cannot later constitute subject merchandise that is "altered." Deacero further contends that record evidence demonstrates that 4.75 mm steel wire rod was imported for different commercial uses than 5.00 mm steel wire rod. *See* J.A. 406–37, 693–95, 3257–88, 3621–23. We address the parties' arguments in turn.

I.

In order to effectively combat circumvention of antidumping duty orders, Commerce may determine that certain types of articles are within the scope of a duty order, even when the articles do not fall within the order's literal scope. *See Target Corp. v. United States*, 609 F.3d 1352, 1355 (Fed. Cir. 2010) (quoting *Wheatland*, 161 F.3d at 1370). The Tariff Act identifies four articles that may fall within the scope of a duty order without unlawfully expanding the order's reach: (1) merchandise completed or assembled in the United States with components produced in a foreign country subject to the duty order (19 U.S.C. § 1677j(a)); (2) merchandise completed or assembled in foreign countries using merchandise subject to a duty order (*id.* § 1677j(b)); (3) merchandise "altered in form or appearance in minor respects . . . whether or not included in the same tariff classification" (*id.* § 1677j(c)(1)); and (4) later-developed merchandise that would have been included in the order (*id.* § 1677j(d)).

The Trade Court erred in interpreting *Wheatland* to mean that if an article is not expressly included within

the literal terms of the scope of the duty order, that article cannot be subject to an anti-circumvention inquiry. In *Wheatland*, we held that minor alteration inquiries are inappropriate when the antidumping duty order expressly excludes the allegedly altered product. *Wheatland*, 161 F.3d at 1369–70. In that case, the final determination of less-than-fair-value sales contained an express exclusion that made clear what merchandise was not covered:

> The scope is not limited to standard pipe and fence tubing, or those types of mechanical and structural pipe that are used in standard pipe applications. All carbon steel pipes and tubes within the physical description outlined above are included within the scope of this investigation, *except line pipe*, oil country tubular goods, boiler tubing, cold-drawn or cold-rolled mechanical tubing, pipe and tube hollows for redraws, finished scaffolding, and finished rigid conduit. *Standard pipe that is dual or triple certified/stenciled that enters the U.S. as line pipe of a kind used for oil or gas pipelines is also not included in this investigation.*

*Id.* at 1367 (emphases in *Wheatland* opinion) (citation omitted). We reasoned in *Wheatland* that including the excluded standard pipe products would "frustrate the purpose of the antidumping laws because it would allow Commerce to assess antidumping duties on products intentionally omitted from the ITC's injury investigation." *Id.* at 1371.

In *Nippon Steel*, we concluded that Commerce could institute an anti-circumvention inquiry on products with chemical weights exceeding the literal scope of the duty order. *Nippon Steel Corp. v. United States*, 219 F.3d 1348, 1350, 1356–57 (Fed. Cir. 2000). The duty order covered steel products not exceeding 0.0008% boron. *Id.* at 1350. We distinguished *Wheatland* because the extra

boron above 0.0008% did not significantly alter the merchandise at issue. *Id.* at 1356–57 (citation omitted). We also observed that the explicit exclusions in *Wheatland* "were well known when the order was issued" and amounted to more than "insignificant alterations to an existing product." *Id.* at 1356.

Unlike *Wheatland*, the duty order at issue contains no explicit exclusion of small-diameter steel wire rod. Although the scope of the duty order sets a cross-sectional range (5.00 mm to 19.00 mm), that cannot be read to expressly exclude for purposes of anti-circumvention inquiries all products outside that range. J.A. 222. The purpose of minor alteration anti-circumvention inquiries is to determine whether articles not expressly within the literal scope of a duty order may nonetheless be found within its scope as a result of a minor alteration to merchandise covered in the investigation. To conclude otherwise would render meaningless Congress's intent to address circumvention concerns. Here, the duty order explicitly excludes certain metallic compositions of steel wire rod, but goes no further. Thus, while the duty order provides a cross-sectional range, it does not provide that steel wire rod less than 5.00 mm diameter should necessarily be excluded from its scope.

## II.

We conclude that Commerce's initial minor alteration anti-circumvention determination was supported by substantial evidence. Specifically, substantial evidence supports Commerce's conclusion that the smallest diameter steel wire rod produced in the investigated countries at the time the petition was filed was 5.5 mm. That some quantity of small-diameter steel wire rod may have been in existence at some time in non-investigated countries does not limit Commerce's minor alteration analysis in the proceeding under review.

CONCLUSION

Commerce's initial minor alteration anti-circumvention affirmative determination is in accordance with law and supported by substantial evidence. The decision of the Trade Court is hereby *reversed* and Commerce's initial affirmative circumvention determination is reinstated.

**REVERSED**

COSTS

Each party shall bear its own costs.