# United States Court of Appeals for the Federal Circuit

---

**TAI-AO ALUMINIUM (TAISHAN) CO., LTD., TAAL AMERICA LTD., REGAL IDEAS, INC.,**
*Plaintiffs*

**v.**

**UNITED STATES,**
*Defendant*

**ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,**
*Defendant-Appellant*

---

2020-1501

---

Appeal from the United States Court of International Trade in No. 1:17-cv-00216-GSK, Judge Gary S. Katzmann.

---

Decided: December 17, 2020

---

ALAN H. PRICE, Wiley Rein, LLP, Washington, DC, for defendant-appellant. Also represented by ROBERT E. DEFRANCESCO, III, LAURA EL-SABAAWI, DERICK HOLT, ELIZABETH S. LEE.

---

Before PROST, *Chief Judge*, DYK and WALLACH, *Circuit Judges.*

DYK, *Circuit Judge.*

On May 26, 2011, the United States Department of Commerce ("Commerce") issued antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China ("PRC") ("Orders").  On March 21, 2016, Commerce initiated an anti-circumvention inquiry as to heat-treated 5050-grade extruded aluminum products exported by China Zhongwang Holdings Ltd. and its affiliates.  On November 14, 2016, Commerce announced in its Preliminary Determination that it was applying the anti-circumvention inquiry to all heat-treated 5050-grade extruded aluminum products from the PRC, including those of Tai-Ao Aluminum (Taishan) Co., Ltd. and TAAL America Ltd. (collectively, "Tai-Ao") and Regal Ideas, Inc. ("Regal"), and further determined that all such products were circumventing the Orders.  Commerce accordingly instructed the United States Customs and Border Protection ("Customs") to suspend liquidation of all heat-treated 5050-grade extruded aluminum products from the PRC entered, or withdrawn from warehouse, on or after March 21, 2016, the date that the original inquiry was commenced.

The Court of International Trade ("Trade Court") found that Commerce did not provide adequate notice to Tai-Ao and Regal that their products were subject to the inquiry initiated on March 21, 2016, and instead "liquidation should have been suspended from the date of the Preliminary Determination," (November 14, 2016), and remanded to Commerce to reformulate its liquidation instructions accordingly.  *Tai-Ao Aluminium (Taishan) Co. v. United States* ("*Tai-Ao I*"), 391 F. Supp. 3d 1301, 1315 (Ct. Int'l Trade 2019).  On remand from the Trade Court, Commerce reformulated its liquidation instructions, instructing Customs to exclude from the scope of the Orders, and therefore exclude from duty assessment, entries for Tai-Ao made

between March 21, 2016, and November 13, 2016.[1] The Trade Court sustained Commerce's reformulated liquidation instructions. *Tai-Ao Aluminium (Taishan) Co. v. United States* ("*Tai-Ao II*"), 415 F. Supp. 3d 1391, 1395 (Ct. Int'l Trade 2019). We conclude that the Trade Court did not err in its remand decision and affirm.

BACKGROUND

I

The Tariff Act of 1930, as amended, "permits Commerce to impose two types of duties on imports that injure domestic industries." *See Guangdong Wireking Housewares & Hardware Co. v. United States*, 745 F.3d 1194, 1196 (Fed. Cir. 2014). First, Commerce may levy antidumping duties on goods "sold in the United States at less than . . . fair value." 19 U.S.C. § 1673. Second, Commerce may impose countervailing duties on goods that receive "a countervailable subsidy" from a foreign government. *Id.* § 1671(a).

In order to effectively combat circumvention of antidumping duty or countervailing duty orders, "a domestic interested party may allege that changes to an imported product . . . constitutes circumvention under [19 U.S.C. § 1677j]." 19 C.F.R. § 351.225(a) (2020). When such issues

---

[1] The reformulated liquidation instructions state that Tai-Ao's entries that "were entered, or withdrawn from warehouse, for consumption during the period 03/21/2016 through 11/13/2016 . . . are outside of the scope" of the Orders. J.A. 1237–38. This remedy has the same effect as suspension of liquidation for entries made on or after November 14, 2016.

Commerce did not issue reformulated instructions for Regal because Regal had no entries for the period between March 21, 2016 and November 13, 2016.

arise, Commerce may initiate an anti-circumvention inquiry and issue "scope rulings" that "clarify the scope of an order or suspended investigation with respect to particular products." *Id.*; *see also id.* § 351.225(g)–(j). As we noted in *Deacero S.A. de C.V. v. United States*, Commerce may then "determine that certain types of articles are within the scope of a duty order, even when the articles do not fall within the order's literal scope." 817 F.3d 1332, 1337 (Fed. Cir. 2016); *see* 19 U.S.C. § 1677j. Anti-circumvention inquiries are distinct from "[o]ther scope determinations," which clarify whether products fall within the literal scope of an order. 19 C.F.R. § 351.225(a), (k); *see also Target Corp. v. United States*, 609 F.3d 1352, 1362 (Fed. Cir. 2010) (describing differences between "[c]onventional scope inquiries" and anti-circumvention inquiries).

If Commerce makes a preliminary determination that the products are circumventing duty orders, then Commerce will order Customs to "suspend liquidation and to require a cash deposit of estimated duties, at the applicable rate, for each unliquidated entry of the product entered, or withdrawn from warehouse, for consumption on or after the date of initiation of the scope inquiry." 19 C.F.R. § 351.225(*l*)(2). "Liquidation means the final computation or ascertainment of duties on entries for consumption or drawback entries." *Id.* § 159.1. Generally, "Customs has one year from the time of filing to liquidate an entry under 19 U.S.C. § 1504(a)." *Ford Motor Co. v. United States*, 811 F.3d 1371, 1374 (Fed. Cir. 2016). Suspension of liquidation enables Commerce to impose duties on entries that might otherwise escape duty liability pending Commerce's final determination that the products are circumventing duty orders. As we discuss in detail below, Commerce must provide notice of the initiation of the scope inquiry (here, an anti-circumvention inquiry), which must include "[a] description of the product that is the subject of the scope inquiry" and  "[a]n explanation of the reasons for the Secretary's decision to initiate a scope inquiry," 19 C.F.R.

§ 351.225(f)(1)(i)–(ii). If such notice is not given, Commerce cannot suspend liquidation of entries entered "on . . . the date of initiation of the scope inquiry." *Id.* § 351.225(*l*)(2).

## II

On May 26, 2011, Commerce issued antidumping and countervailing duty orders on aluminum extrusions from the PRC. *See Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order*, 76 Fed. Reg. 30,650 (Dep't of Commerce May 26, 2011); *Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 30,653 (Dep't of Commerce May 26, 2011) (collectively, "the Orders"). The Orders expressly included products made of alloy with an Aluminum Association series designation commencing with the number 6 (i.e., designations of 6xxx) where magnesium accounted for at least 0.1 percent but not more than 2.0 percent of total materials by weight. The Orders expressly excluded products made of alloy with an Aluminum Association series designation commencing with the number 5 (i.e., designations of 5xxx) and containing in excess of 1.0 percent magnesium by weight.

On October 22, 2015, the Aluminum Extrusions Fair Trade Committee ("AEFTC"), a trade association of domestic producers of aluminum extrusions, filed a joint Scope Clarification and Anti-Circumvention Inquiry Request for certain merchandise from China Zhongwang Holdings, Ltd. and its affiliates (collectively, "Zhongwang"). On request from Commerce, AEFTC resubmitted its request on December 30, 2015, and contended that Zhongwang's 5050-grade aluminum alloy extrusion products circumvented the scope of the Orders. AEFTC contended that 5050-grade aluminum alloy, which has between 1.1 and 1.8 percent magnesium by weight and therefore "technically meets the scope exclusion for 5xxx series," "behaves like in-scope 6xxx series subject merchandise" and thereby circumvented the Orders. *Aluminum Extrusions from the People's Republic*

*of China: Initiation of Anti-Circumvention Inquiry* ("Initiation Notice"), 81 Fed. Reg. 15,039, 15,042 (Dep't of Commerce Mar. 21, 2016); J.A. 610.    AEFTC's application focused on "Zhongwang and its affiliates' '5050' alloy extrusion imports" and included evidence regarding Zhongwang's advertisements and sales of aluminum products. J.A. 95; Initiation Notice, 81 Fed. Reg. at 15,044.

On March 21, 2016, in response to AEFTC's request, Commerce initiated an anti-circumvention inquiry and published notice of the initiation of the inquiry in the Federal Register.    As AEFTC acknowledged, Commerce "initiated this anti-circumvention inquiry only on Zhongwang," J.A. 1032, even though Commerce stated that AEFTC provided evidence that was not limited to Zhongwang, such as "information indicating that domestic producers [were] competing with Chinese-sourced 5050-grade aluminum alloy products" and "evidence showing that such 5050-grade aluminum alloy extruded products [were] marketed by Chinese producers to purchasers in the same manner that 6xxx-series [were] marketed."    Initiation Notice, 81 Fed. Reg. at 15,043.

Commerce's "Summary" of the Initiation Notice stated:

> In response to a request from [AEFTC], [Commerce] is initiating an anti-circumvention inquiry pursuant to [19 U.S.C. § 1677j(c) and (d)] . . . to determine whether extruded aluminum products that meet the chemical specifications for 5050-grade aluminum alloy, which are heat-treated, and exported by [Zhongwang] are circumventing the antidumping duty (AD) and countervailing duty (CVD) orders on aluminum extrusions from the People's Republic of China (PRC).

Initiation Notice, 81 Fed. Reg. at 15,039 (footnote citing the Orders omitted).

Under the heading "Merchandise Subject to the Anti-Circumvention Inquiry," Commerce stated, "This anti-circumvention inquiry covers extruded aluminum products that meet the chemical specifications for 5050-grade aluminum alloy, which are heat-treated, and exported by Zhongwang." Initiation Notice, 81 Fed. Reg. at 15,042 (footnote listing the "names of known Zhongwang's Chinese and U.S. affiliates" omitted). But as pertinent here, Commerce also stated:

> The Department intends to consider whether the inquiry should apply to all imports of extruded aluminum products that meet the chemical specifications for 5050-grade aluminum alloy and are heat-treated, regardless of producer, exporter, or importer, from the PRC.

*Id.*

Following the publication of the Initiation Notice, Commerce issued an anti-circumvention questionnaire only to Zhongwang. Zhongwang failed to respond.

On July 8, 2016, after the deadline for Zhongwang's response passed, AEFTC requested that Commerce "immediately issue anti-circumvention questionnaires to additional Chinese producers believed to be circumventing the orders," including Tai-Ao. J.A. 1033–34. It appears that Commerce did not issue additional questionnaires. On September 28, 2016, Endura Products, Inc., a domestic interested party, submitted evidence that "multiple companies" were "importing inquiry merchandise from multiple producers/exporters." J.A. 1060–61. On October 7, 2016, AEFTC submitted evidence "indicating at least 25 other Chinese companies that [were] producing and/or exporting inquiry merchandise." *Id.* at 1060.

In a Preliminary Determination Memorandum dated November 3, 2016, Commerce "[found] that the record support[ed] applying [the anti-circumvention] inquiry to all

imports from the PRC of extruded aluminum products that meet the chemical specifications for 5050-grade aluminum alloy and are heat treated." J.A. 1060–61. In support of its determination, Commerce cited the information provided by Endura and AEFTC after the publication of the Initiation Notice and Commerce's "prior and ongoing scope proceedings concerning 5050 products," which demonstrated that companies including Regal were "likewise producing, exporting, and/or importing inquiry merchandise." *Id.*

On November 14, 2016, Commerce published its Preliminary Determination in the Federal Register, and, under the heading "Merchandise Subject to the Anti-Circumvention Inquiry," stated:

> The products covered by this inquiry are heat-treated extruded aluminum products that meet the chemical specifications for 5050-grade aluminum alloy (inquiry merchandise), regardless of producer, exporter, or importer, from the PRC.

*Aluminum Extrusions from the People's Republic of China: Affirmative Preliminary Determination of Circumvention* ("Preliminary Determination"), 81 Fed. Reg. 79,444, 79,445 (Dep't of Commerce Nov. 14, 2016).

Commerce also preliminarily determined that all such imports were "circumventing, and should be included within, the scope of the Orders." *Id.* at 79,445–46. Instead of applying its Preliminary Determination to product entries made on or after November 14, 2016, Commerce applied suspension to all entries made on or after March 21, 2016. Commerce accordingly instructed Customs "to suspend liquidation of inquiry merchandise from the PRC (regardless of producer, exporter, or importer), entered, or withdrawn from warehouse, for consumption, on or after March 21, 2016, the date of publication of the initiation of this inquiry" and to "require a cash deposit of estimated duties at the rate applicable to the exporter, on all unliquidated entries of inquiry merchandise entered, or

withdrawn from warehouse, for consumption on or after March 21, 2016." *Id.* at 79,446.

Tai-Ao and Regal challenged Commerce's liquidation instructions before the Trade Court, arguing that the anti-circumvention initiation notice published on March 21, 2016, "did not provide adequate notice that their products were subject to the inquiry and therefore that liquidation should not have been suspended as of that date." *Tai-Ao I*, 391 F. Supp. 3d at 1305. Tai-Ao cited previous scope determinations made under § 351.225(k) for Sinobec Resources LLS, Kota International LTD, and Trending Imports LLC, which determined that "5050-grade extrusions were non-scope merchandise,"[2] arguing that "the existence of the 5050-grade scope rulings coupled with the fact that the Initiation Notice was limited to Zhongwang engendered a reliance interest that [duty] liability would not be assessed until the circumvention inquiry was expressly initiated as to Tai-Ao." Pls.' Mem. Law in Supp. Mot. J. Agency R. at 44–45, *Tai-Ao I*, 391 F. Supp. 3d 1301 (Ct. Int'l Trade 2019). Regal made similar arguments.

Commerce determined that the statement that Commerce "intend[ed] to consider whether the inquiry should apply to all imports" including those of Tai-Ao and Regal was sufficient to make parties "aware of the legal

---

[2]    Tai-Ao cited scope rulings made pursuant to 19 C.F.R. § 351.225(k) in 2012 and 2016 for Kota International, Ltd., Trending Imports, LLC, and Sinobec Resources LLS, which found that those entities' aluminum extrusions made from 5050 alloy were outside the scope of the Orders. Commerce later reversed its preliminary rulings as to Trending Imports, LLC and Kota International, finding in a final determination that issued concurrently with the Final Determination for Tai-Ao and Regal that Kota and Trending Imports' products were circumventing the Orders.

consequences of an affirmative determination." Def.'s Opp'n Consolidated Pls.' Mots. J. Agency R. at 43, *Tai-Ao I*, 391 F. Supp. 3d 1301 (Ct. Int'l Trade 2019).

On appeal, the Trade Court concluded that "Commerce's decision to suspend liquidation with respect to [Tai-Ao and Regal] from the date of the Initiation Notice was impermissible because [Tai-Ao and Regal] did not receive adequate notice at that time. The Preliminary Determination [on November 14, 2016] provided the first notice that [Tai-Ao and Regal's] products were subject to the inquiry, and therefore liquidation should be assessed as of that date." *Tai-Ao I*, 391 F. Supp. 3d at 1313–14. The Trade Court remanded to Commerce to reformulate its liquidation instructions accordingly. *Id.* at 1316. Commerce filed reformulated instructions, which the Trade Court sustained as "consistent with the remand order." *Tai-Ao II*, 415 F. Supp. 3d at 1395.

AEFTC appeals the Trade Court's decision sustaining Commerce's reformulated liquidation instructions. Neither Commerce nor any other party to the Trade Court proceeding have appeared in this appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## DISCUSSION

The sole issue on appeal is whether Commerce's Initiation Notice, published on March 21, 2016, provided adequate notice to Tai-Ao and Regal that their products would be subject to Commerce's anti-circumvention inquiry and therefore their unliquidated entries entered on or after that date could be subject to duties. "We review the [Trade Court's] decision to sustain Commerce's final results and its remand redeterminations de novo." *SolarWorld Ams., Inc. v. United States*, 962 F.3d 1351, 1356 (Fed. Cir. 2020). We review whether Commerce's initial decision, prior to remand, was "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "A party may challenge an

interlocutory decision of a trial court on appeal from the final judgment." *Sears Roebuck & Co. v. United States*, 22 F.3d 1082, 1084 (Fed. Cir. 1994), *superseded by statute on other grounds*, 19 U.S.C. § 1202, *as recognized in JVC Co. of Am., Div. of US JVC Corp. v. United States*, 234 F.3d 1348, 1354–55 (Fed. Cir. 2000).

Two subsections of Commerce's anti-circumvention inquiry regulations are at issue.  First, 19 C.F.R. § 351.225(*l*) authorizes Commerce to order suspension of liquidation of merchandise entered on or after the date of the initiation of the scope inquiry.  It provides:

> If liquidation has not been suspended [at the time of an affirmative preliminary determination of circumvention], the Secretary will instruct the Customs Service to suspend liquidation and to require a cash deposit of estimated duties, at the applicable rate, for each unliquidated entry of the product entered, or withdrawn from warehouse, for consumption on or after the date of initiation of the scope inquiry.

19 C.F.R. § 351.225(*l*)(2).  Thus, "[w]hen Commerce rules that a product falls within the scope of an order, but 'there has been no [previous] suspension of liquidation,' a new suspension must be ordered beginning only [with entries] 'on or after the date of initiation of the scope inquiry.'" *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1319 (Fed. Cir. 2020) (quoting 19 C.F.R. § 351.225(*l*)(3)) (second alteration in original); *see also* 19 C.F.R. § 351.225(*l*)(2).

Second, 19 C.F.R. § 351.225(f)(1) requires Commerce to provide notice of the initiation of the anti-circumvention inquiry.  If Commerce decides to initiate a scope inquiry (such as an anti-circumvention inquiry) on application from an interested party, Commerce is required to provide notice that includes "[a] description of the product that is the subject of the scope inquiry" and "[a]n explanation of the

reasons for [Commerce's] decision to initiate a scope inquiry." 19 C.F.R. § 351.225(f)(1)(i)–(ii). [3]

This notice requirement is designed to avoid unfairness to importers and foreign exporters. In explaining why the regulations require Commerce to first make an affirmative preliminary or final determination of circumvention before suspending liquidation, Commerce noted it must provide

---

[3]    Commerce has proposed regulations that would allow Commerce, once it has reached an affirmative preliminary determination of circumvention, to instruct Customs "[t]o suspend liquidation of all . . . unliquidated entries of the product at issue [for which liquidation was not previously suspended], and apply the applicable cash deposit rate under the order to those entries." *Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws* ("Proposed Regulations"), 85 Fed. Reg. 49472, 49,501 (Dep't. of Commerce Aug. 13, 2020) (proposed § 351.226(l)(2)(ii)). The proposed regulations would permit Commerce to suspend liquidation of all entries that are unliquidated dating "back to the earliest suspension date" under the original duty orders, unlike the current regulations, which only allow Commerce to suspend liquidation of entries made on or after the date of the initiation of the scope inquiry. *Id.* at 49,483, 49,488.

Commerce has also proposed regulations that would remove the current notice requirements for initiation of circumvention inquiries. *Compare* 19 C.F.R. § 351.225(f)(1)(i)–(ii) with Proposed Regulations, 85 Fed. Reg. at 49,496–97, 49,499–500. Commerce described the proposed regulations as "remov[ing] unnecessary and burdensome notice and service requirements." 85 Fed. Reg. at 49,472.

We express no opinion as to the validity of the proposed regulations or their applicability to circumstances such as those present here.

prior notice to foreign interested parties that provides "a meaningful opportunity to present relevant information and defend their interests":

> Suspension of liquidation is an action with a potentially significant impact on the business of U.S. importers and foreign exporters and producers. The Department should not exercise this governmental authority before it has first given all parties a meaningful opportunity to present relevant information and defend their interests, and before the Department gives a reasoned explanation for its action. Formal initiation of a scope inquiry by the Department represents nothing more than a finding by the Department that it cannot resolve the issue on the basis of the plain language of the scope description or the clear history of the original investigation. It would be extremely unfair to importers and exporters to subject entries not already suspended to suspension of liquidation and possible duty assessment with no prior notice and based on nothing more than a domestic interested party's allegation. Because, when liquidation has not been suspended, Customs, at least, and perhaps the Department as well, have viewed the merchandise as not being within the scope of an order, importers are justified in relying upon that view, at least until the Department rules otherwise. Therefore, the Department will not order the suspension of liquidation until it makes either a preliminary or final affirmative scope ruling, whichever occurs first.

*Antidumping Duties; Countervailing Duties* ("Preamble"), 62 Fed. Reg. 27,296, 27,328 (Dep't of Commerce May 19, 1997) (Final Rule).

Thus, Commerce could only suspend liquidation of entries made on or after March 21, 2016, that were unliquidated as of November 14, 2016, if Commerce provided

adequate notice that the merchandise subject to the scope inquiry included Tai-Ao and Regal's products on March 21, 2016.  The notice requirement reflects "the broader due-process principle that before an agency may enforce an order or regulation by means of a penalty or monetary sanction, it must 'provide regulated parties fair warning of the conduct [the order or regulation] prohibits or requires.'" *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300–01 (Fed. Cir. 2013) (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 (2012)) (alteration in original).

Commerce's statement in the Initiation Notice on March 21, 2016, that the anti-circumvention inquiry "cover[ed] extruded aluminum products that meet the chemical specifications for 5050-grade aluminum alloy, which are heat-treated, and exported by Zhongwang" did not provide notice to Tai-Ao and Regal, and neither Commerce nor any other party contended that it did.  Initiation Notice, 81 Fed. Reg. at 15,042.

Commerce's additional language in the March 21, 2016, Initiation Notice that it "intend[ed] to consider whether the inquiry should apply to all imports . . . regardless of producer, exporter, or importer, from the PRC" also did not provide sufficient notice that all imports other than those of Zhongwang would be "cover[ed]" by the inquiry.  *Id.*[4]   A statement of intention to "consider whether the

---

[4]    Commerce explained in its Final Determination Memorandum that it included language of its "inten[t] to consider" products from entities other than Zhongwang because, "[a]t the time of the initiation of this anti-circumvention inquiry, *the record contained evidence indicating that Zhongwang and its numerous alleged affiliates were producing, exporting, and/or importing inquiry merchandise. Based on this evidence*, [Commerce] indicated in the Initiation Notice that it intended to consider applying the

inquiry should apply to all imports" is not the same as a notice that such imports are within the scope of the inquiry.

Several other factors support this conclusion. First, here, the initial anti-circumvention inquiry was not country-wide. Anti-circumvention determinations may be company-specific or country-wide.[5] The Initiation Notice here was not country-wide since it named Zhongwang's products specifically as subject to the inquiry. Only on November 14, 2016, did the inquiry become country-wide when Commerce announced that "[t]he products covered by this

---

determination in this inquiry to all imports of extruded aluminum products that meet the chemical specifications for 5050-grade aluminum alloy and are heat-treated, regardless of producer, exporter, or importer, from the PRC." *Anti-Circumvention Inquiry Regarding Aluminum Extrusions from the People's Republic of China* (Final Determination Memorandum) at 29 (Dep't of Commerce Jul. 20, 2017) (emphasis added) (footnotes omitted).

[5]    As Commerce explained in proposing new regulations for anti-circumvention inquiries,

> In its experience, Commerce has witnessed scenarios in which the circumvention determined to exist was unique to the interested party under review. In that situation, a company-specific circumvention determination is warranted. However, Commerce has also found circumvention to exist in other cases in which the circumvention warranted a country-wide determination.

Proposed Regulations, 85 Fed. Reg. at 49,489.

Proposed § 351.226(m)(1) would allow Commerce to "consider, based on the available record evidence, whether the circumvention determination should be applied on a country-wide basis." *Id.* at 49,501.

inquiry [were] heat-treated extruded aluminum products that meet the chemical specifications for 5050-grade aluminum alloy . . . regardless of producer, exporter, or importer, from the PRC." Preliminary Determination, 81 Fed. Reg. at 79,445.

Second, the regulations require that Commerce's Initiation Notice include "[a]n explanation of the reasons for [Commerce's] decision to initiate a scope inquiry." 19 C.F.R. § 351.225(f)(1)(ii). As explained in the Preamble, "a reasoned explanation" as to why Commerce initiated an anti-circumvention inquiry that could lead to the imposition of duties helps alleviate potential "unfair[ness]" by providing "prior notice." Preamble, 62 Fed. Reg. at 27,328.

Here, Commerce's explanation for why it initiated the inquiry focused primarily on Zhongwang. Commerce expressly cited AEFTC's "Scope Clarification and Anti-Circumvention Inquiry Request for certain merchandise from Zhongwang," which Commerce described as "contend[ing] that Zhongwang's 5050-grade aluminum alloy extrusion products are circumventing the scope of the Orders," and Commerce explained that, "in response" to that request by AEFTC, it initiated an anti-circumvention inquiry as to Zhongwang. Initiation Notice, 81 Fed. Reg. at 15039–40.

Third, our determination is further supported by Commerce's conduct during its investigation, which would not have put Tai-Ao and Regal on notice that they were subject to the inquiry before the Preliminary Determination was published. After the Initiation Notice was published, Commerce issued a questionnaire only to Zhongwang, suggesting that Commerce intended its inquiry to pertain only to Zhongwang. In the period between the Initiation Notice and the Preliminary Determination, Commerce received additional information from domestic interested parties, AEFTC and Endura, that led Commerce to apply its inquiry to entities other than Zhongwang. This additional

information was significant because it led Commerce to expand the scope of its inquiry.

There are no other indicia that would support a different result. AEFTC relies on Commerce's statement in the March 2016 notice that, "[i]n accordance with 19 C.F.R. 351.225(*l*)(2), if [Commerce] issues a preliminary affirmative determination, [Commerce would] instruct U.S. Customs and Border Protection to suspend liquidation and require a cash deposit of estimated duties, at the applicable rate, for each unliquidated entry of the merchandise at issue, entered or withdrawn from warehouse for consumption on or after the date of initiation of the inquiry." Appellant's Br. 18 (quoting Initiation Notice, 81 Fed. Reg. at 15,044) (second alteration in original). But "the merchandise at issue" at the time referred to "the merchandise subject to the inquiry," namely, products "exported by Zhongwang." Initiation Notice, 81 Fed. Reg. at 15,044, 15,042. It was not until November 14, 2016, that Commerce changed the description of the "Merchandise Subject to the Anti-Circumvention Inquiry" and thus provided adequate notice that Tai-Ao and Regal's products would be subject to the anti-circumvention inquiry, and liquidation could only have been suspended for Tai-Ao and Regal as of that date. Preliminary Determination, 81 Fed. Reg. at 79,445.

Because Commerce did not provide adequate notice to Tai-Ao and Regal until November 14, 2016, Commerce's instructions to suspend liquidation effective March 21, 2016, were not in accordance with law. We affirm the Trade Court's decision sustaining Commerce's reformulated liquidation instructions as in accordance with law.

**AFFIRMED**

COSTS

No costs.