Slip Op. 23-115

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| UNITED STATES,<br><br>       **Plaintiff,**<br><br>  v.<br><br>**WANXIANG AMERICA<br>CORPORATION,**<br><br>       **Defendant.** | **Before: Gary S. Katzmann, Judge**<br>**Court No. 22-00205** |

## OPINION AND ORDER

[ Wanxiang's Motion to Dismiss is denied. ]

Dated: <u>August 16, 2023</u>

<u>Mikki Cottet</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Plaintiff United States.  With her on the brief were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, and <u>L. Misha Preheim</u>, Assistant Director.  Of counsel on the brief was <u>Steven J. Holtkamp</u>, Office of the Associate Chief Counsel, U.S. Customs and Border Protection, of Chicago, IL.

<u>Michael E. Roll</u>, Roll & Harris LLP, of Los Angeles, CA, argued for Defendant Wanxiang America Corporation.  With him on the brief was <u>Brett I. Harris</u>.

Katzmann, Judge:  This case implicates important questions of fair notice and culpable intent when facing the specter of civil administrative penalties.  Plaintiff the United States ("the Government") brings an action seeking more than $97 million in lost revenue and civil penalties against Defendant Wanxiang America Corporation ("Wanxiang") for nine counts of grossly negligent and negligent violations of 19 U.S.C. § 1592 across hundreds of entries.  The Complaint pleads two categories of claims.  First, the Government alleges that Wanxiang negligently failed to identify that its entries of wheel hub assemblies ("WHAs") were subject to the antidumping

duty order on taper roller bearings ("TRBs") and, in turn, did not pay the requisite antidumping duties.[1]  See Antidumping Duty Order; Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, from the People's Republic of China, 52 Fed. Reg. 22667 (Dep't Com. June 15, 1987) ("TRB Order").  Second, the Government alleges that Wanxiang negligently classified its entries of automotive parts and accessories under incorrect item numbers of the Harmonized Tariff Schedule of the United States ("HTSUS"); some of those classifications, the Government further

_____

[1] A "bearing" is "a machine part in which another part (such as a journal or pin) turns or slides." Bearing, Merriam-Webster, https://www.merriam-webster.com/dictionary/bearing (last updated Aug. 11, 2023).  "TRBs are a type of antifriction bearing made up of an inner ring (cone) and an outer ring (cup).  Cups and cones sell either individually or as a preassembled 'set.'" NTN Bearing Corp. of Am. v. United States, 127 F.3d 1061, 1063 (Fed. Cir. 1997).

WHAs, while similar to TRBs, are "significantly different products" according to Wanxiang. Def.'s Br. at 8.  In connection with a sunset review of the TRB Order, the International Trade Commission ("ITC") stated that:

> All TRBs . . . including wheel hub assemblies, share the same basic elements (i.e., cups, cones, rolling elements, and cages) and perform the same basic functions of reducing friction among moving parts, carrying loads, and handling radial and thrust forces.  Indeed, most of the value of a wheel hub assembly is attributed to components common to TRBs and wheel hub assemblies.

Tapered Roller Bearings from China at 12, Inv. No. 731-TA-344 (Third Review), USITC Pub. 4343 (Aug. 2012) (emphasis added).  Nonetheless, the ITC found that the majority of market participants indicated that TRBs and WHAs:

> do not have the same physical characteristics or end uses, citing, for example, that wheel hub assemblies are dedicated for automotive use whereas TRBs have multiple applications and that wheel hub assemblies incorporate additional features or parts, such as flanges or ABS components not found on TRBs.

Id.  The question of whether WHAs are "significantly different" from TRBs is relevant to whether Wanxiang exercised reasonable care in not identifying WHA entries as subject to the TRB Order. See infra pp. 30–32.  For that reason, apart from presuming the pleaded allegations as true and drawing all reasonable inferences in favor of the Government, the court expresses no view on the degree of similarity between the two products at this stage.

alleges, resulted from gross negligence because Wanxiang knew that those classifications were incorrect.

Wanxiang moved to dismiss the Complaint, see Compl., July 13, 2022, ECF No. 2, for failure to state a claim under USCIT Rule 12(b)(6), see Def.'s Mot. to Dismiss, Oct. 12, 2022, ECF No. 12. Per Wanxiang, both categories of claims fail as a matter of law. First, Defendant contends that while it is now clear that the TRB Order applies to WHAs, it had no fair notice at the time of the entries; the Government's attempt to collect duties and penalties on Wanxiang's then-reasonable interpretation of the TRB Order amounts to an impermissibly retroactive application of law. Second, Wanxiang argues that the alleged misclassifications of automotive parts and accessories fail for three reasons: (i) misclassifications alone cannot constitute the basis for a false statement under 19 U.S.C. § 1592; (ii) classification under a particular tariff heading was correct as a matter of law; and (iii) an alleged nonbinding notice from Customs cannot, without more, plausibly establish gross negligence or negligence.

Wanxiang's Motion to Dismiss is denied. Considering the issues relating to automotive parts first, the court holds that (i) an alleged misclassification, without more, sufficiently pleads falsity under § 1592; (ii) Wanxiang's proposed tariff heading improperly wades into the merits at the pleadings stage; and (iii) the nonbinding nature of a Customs notice does not vitiate an importer's duty of reasonable care and can support a factual finding that an importer acted in gross negligence of the customs laws. Finally, accepting all allegations in the Complaint as true and construing all reasonable inferences in favor of Plaintiff, the court concludes that Wanxiang's fair notice objection raises relevant questions about whether Wanxiang acted negligently but does not preclude § 1592 liability as a matter of law.

## BACKGROUND

### I.      Legal Framework

It is an importer's responsibility to exercise reasonable care when entering merchandise into the United States. See 19 U.S.C. § 1484(a); 19 C.F.R. pt. 171, app. B(D)(6) (2022). An importer must, "using reasonable care," "make entry . . . by filing with [Customs] . . . such information as is necessary to enable [Customs] to determine whether the merchandise may be released from custody of the Bureau of Customs and Border Protection." 19 U.S.C. § 1484(a)(1)(A). Customs's regulations require that importers file an "entry summary," and, at time of entry, file "[e]vidence of the right to make an entry," a "commercial invoice," and a "packing list." 19 C.F.R. § 142.3(a)–(b). Among other requirements, "[t]he entry summary filed for merchandise subject to an antidumping or countervailing duty order must include the unique identifying number assigned by the Department of Commerce, International Trade Administration." Id. § 141.61(c).

19 U.S.C. § 1592 enables the United States to enforce those requirements against importers. Under § 1592, the United States may file suit in the Court of International Trade to collect lost revenue and civil penalties for the fraudulent, grossly negligent, or negligent entry of merchandise into the United States by means of material false information or material omission.[2] Subsection 1592(a) states in relevant part:

---

[2] Before filing suit in court, Customs must initiate an administrative process. Id. § 1592(b). As part of that administrative process, Customs must issue a "pre-penalty notice" to the allegedly offending importer, a "written penalty notice," and ultimately a "final determination and the findings of fact and conclusions of law on which such a determination is based." Id. The importer has two opportunities to make representations to Customs defending its conduct: first after the pre-penalty notice, and second after the written penalty notice. Id. § 1592(b)(1)(A)(vii), (b)(2).

Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty, tax, or fee thereby, no person, by fraud, gross negligence, or negligence—

(A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of—

(i) any document or electronically transmitted data or information, written or oral statement, or act which is material and false, or

(ii) any omission which is material . . . .

19 U.S.C. § 1592(a)(1)(A). Claims under § 1592(a) require, then, at most four elements:

(1) act or omission;

(2) materiality;

(3) falsity (if the violation is not premised on an omission); and

(4) culpability.

See id.[3]

Under element four, Customs's regulations further define the three degrees of culpability in § 1592: fraud, gross negligence, and negligence. See 19 C.F.R. pt. 171, app. B(C) (2022). Only gross negligence and negligence are at issue here. Grossly negligent violations of § 1592 "result[] from an act or acts (of commission or omission) done with actual knowledge of or wanton disregard for the relevant facts and with indifference to or disregard for the offender's obligations under the statute." Id. pt. 171, app. B(C)(2); United States v. Ford Motor Co., 463 F.3d 1286, 1292 (Fed. Cir. 2006) ("An importer is guilty of gross negligence if it behaved willfully, wantonly, or with reckless disregard in its failure to ascertain both the relevant facts and the statutory obligation,

---

[3] Section 1592 liability may also be premised on aiding and abetting conduct, which is not at issue in this case. See id. § 1592(a)(1)(B).

or acted with an utter lack of care.").  Moreover, "if the monetary penalty is based on gross negligence, the United States shall have the burden of proof to establish all the elements of the alleged violation."  19 U.S.C. § 1592(e)(3).  The maximum penalty for gross negligence is "the lesser of (i) the domestic value of the merchandise, or (ii) four times the lawful duties, taxes, and fees of which the United States is or may be deprived."  Id. § 1592(c)(2)(A).

By contrast, an importer's conduct is negligent if:

> it results from an act or acts (of commission or omission) done through either the failure to exercise the degree of reasonable care and competence expected from a person in the same circumstances either: (a) in ascertaining the facts or in drawing inferences therefrom, in ascertaining the offender's obligations under the statute; or (b) in communicating information in a manner so that it may be understood by the recipient.

19 C.F.R. pt. 171, app. B(C)(1).  As a general rule, a failure "(a) to ensure that statements made and information provided in connection with the importation of merchandise are complete and accurate; or (b) to perform any material act required by statute or regulation" would constitute negligence.  Id.  In negligence cases, "Customs has the burden merely to show that a materially false statement or omission occurred; once it has done so, the defendant must affirmatively demonstrate that it exercised reasonable care under the circumstances."  Ford, 463 F.3d at 1279; see also 19 U.S.C. § 1592(e)(4) (shifting burden to the alleged violator to show that its act or omission "did not occur as a result of negligence").  The maximum penalty for negligence is "the lesser of (i) the domestic value of the merchandise, or (ii) two times the lawful duties, taxes, and fees of which the United States is or may be deprived."  19 U.S.C. § 1592(c)(3)(A).

Finally, subsection 1592(d) allows the United States to recover any lawful duties, taxes, or fees lost "as a result of a violation of subsection (a) . . . , whether or not a monetary penalty is assessed."  Id. § 1592(d).

## II.     *Factual Background*

The following facts are allegations pleaded in the Complaint.  Defendant Wanxiang is a subsidiary of Wanxiang Group Corporation, a multinational automotive components manufacturing company located in the People's Republic of China ("China").  Compl. ¶ 6. Wanxiang imported universal joints and parts thereof (including crosses, cross assemblies, yokes, caps, cups, bearing caps, and bearing kits), WHAs incorporating radial ball and tapered roller bearings, radial ball bearings, tapered roller bearings, and other parts and accessories of automobiles (including axles, cages for double offset joints of constant velocity axles ("CV"), races for CV axles used in utility vehicles, CV-joint parts, tube assemblies, and steering shafts for combines) into the United States from October 1, 2007, to September 30, 2012.  Id. ¶¶ 8–9.  That merchandise, the Government alleges, was negligently or grossly negligently entered into the United States by means of material false statements or omissions in violation of 19 U.S.C. § 1592. See id. ¶ 9.

The Government asks that the court enter judgment against Wanxiang for (1) unpaid duties, taxes and fees (lost revenue) pursuant to 19 U.S.C. § 1592(d) in the amount of $31,185,209.11, plus pre-judgment interest pursuant to 19 U.S.C. § 1505, and (2) a penalty in the amount of $66,190,766.98, plus interest, for negligent and grossly negligent violations of 19 U.S.C. § 1592(a).  Id. at 13.  "[A]bsent judgment on Counts Five and Seven for grossly negligent violations of 19 U.S.C. § 1592(a)," the Government alternatively requests that the court assess a penalty in the amount of $62,370,418.22, plus interest, for negligent violations of 19 U.S.C. § 1592(a).  Id. at 14.  To support its claim for relief, the Complaint pleads nine counts that are summarized in the following sections.

### A.      Count 1: Recovery of Lost Revenue Relating to All Products

The United States demands unpaid customs and antidumping duties, taxes, or fees (lost revenue) in the amount of $31,185,209.11 under 19 U.S.C. § 1592(d).  See id. ¶¶ 58–59.

### B.      Count 2: Penalty for Negligence Relating to Wheel Hub Assemblies

In 1987, Commerce issued an antidumping duty order covering TRBs and parts thereof, finished or unfinished, from China.  See TRB Order, 52 Fed. Reg. 22667.  The scope of the antidumping duty order, unchanged from that of the underlying antidumping duty investigation, encompassed:

> [T]apered roller bearings and parts thereof, currently classified in Tariff Schedules of the United States (TSUS) items 680.30 and 680.39; flange, take-up cartridge, and hanger units incorporating tapered roller bearings, currently classified in TSUS item 681.10; and tapered roller housings (except pillow blocks) incorporating tapered rollers, with or without spindles, whether or not for automotive use, currently classified in item 692.32 or elsewhere in the TSUS.

Tapered Roller Bearings, Rollers and Parts Thereof, Finished or Unfinished, From the People's Republic of China; Initiation of Antidumping Duty Investigation, 51 Fed. Reg. 33283, 33284 (Dep't Com. Sep. 19, 1986); see also Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, From the People's Republic of China; Preliminary Determination of Sales at Less Than Fair Value, 52 Fed. Reg. 3833, 3833 (Dep't Com. Feb. 6, 1987) (detailing the same scope). The antidumping case number assigned to the TRB Order is A-570-601.  52 Fed. Reg. at 22667.

From October 1, 2007, to September 30, 2012, Wanxiang entered WHAs exported by Wanxiang Qianchao Company Limited into the United States.  Id. ¶ 20.  The Government alleges three material false statements or omissions in violation of 19 U.S.C. § 1592 in connection with Wanxiang's entry of WHAs: (1) Wanxiang identified the WHAs on the relevant entry summary as "01" consumption entries, not as "03" antidumping entries, see id. ¶ 23; (2) Wanxiang omitted

the antidumping case number, A-570-601, on the relevant entry summary, see id. ¶ 24; and (3) Wanxiang classified the WHAs as automobile parts under Harmonized Tariff Schedule of the United States (HTSUS) heading 8708, in either subheading 8708.99.6890 or subheading 8708.99.8180, at a duty rate of 2.5 percent ad valorem, see id. ¶ 26.

Those three statements or omissions, the Complaint alleges, resulted from a lack of reasonable care and amount to a negligent violation of 19 U.S.C. § 1592. Id. ¶ 61. The Government seeks a penalty for negligence in the amount of $53,879,970.62, which represents two times the total loss of antidumping duties of $26,939,985.31 for the WHAs. Id. ¶ 62.

### C.     Count 3: Penalty for Negligence Relating to Radial Ball Bearings and TRBs

From October 1, 2007, to September 30, 2012, Wanxiang entered radial ball bearings and TRBs into the United States. Id. ¶ 29. Wanxiang classified the radial ball and TRBs that it entered under HTSUS heading 8708, in either subheading 8708.99.6890 or subheading 8708.99.8180, at a duty rate of 2.5 percent ad valorem. Id. ¶ 30. The Complaint alleges that the entries are instead properly classifiable under HTSUS heading 8482, which covers "Ball or roller bearings," and are specifically described by subheading 8482.10.5016 at a duty rate of 9 percent ad valorem, subheading 8482.10.5068 at a duty rate of 9 percent ad valorem, subheading 8482.20.0080 at a duty rate of 5.8 percent ad valorem, and subheading 8482.99.0500 at a duty rate of 9.9 percent ad valorem. Id. ¶ 31.

That false statement, the Complaint alleges, resulted from a lack of reasonable care and amounts to a negligent violation of 19 U.S.C. § 1592. Id. ¶ 64. The Government seeks a penalty for negligence in the amount of $1,204,204.64, which represents two times the total loss of antidumping duties of $602,102.32 for the for the radial ball bearings and TRBs. Id. ¶ 65.

### D.    Counts 4–6: Universal Joints and Parts of Universal Joints

From October 1, 2007, to September 30, 2012, Wanxiang entered universal joints and parts and accessories of universal joints (including crosses, cross assemblies, yokes, caps, cups, bearing caps, and bearing kits) into the United States. Id. ¶ 34.  Before July 1, 2009, Wanxiang classified the universal joints and parts and accessories of universal joints under several HTSUS headings: (1) Heading 8708, in subheading 8708.94.7510 at a duty rate of 2.5 percent ad valorem, subheading 8708.99.1600 duty free, and subheading 8708.99.6890 at a duty rate of 2.5 percent ad valorem; (2) Heading 8709, in subheading 8709.90.0000 as duty free; and Heading 8483, in subheadings 8483.10.5000, 8483.90.0030, and 8483.90.0080, all duty free. Id. ¶ 35.

Those false statements before July 1, 2009, the Complaint alleges, resulted from a lack of reasonable care and amounts to a negligent violation of 19 U.S.C. § 1592. Id. ¶ 67.  The Government seeks a penalty for negligence in the amount of $3,368,808.32, which represents two times the total loss of duties of $1,684,404.16 for the universal joints and parts and accessories of universal joints entered on and between October 1, 2007, and July 1, 2009. Id. ¶ 68.

On July 1, 2009, Customs issued a CBP Form 29, "Notice of Action," to Wanxiang. Id. ¶ 36.  In the Notice of Action, Customs stated that Wanxiang had misclassified crosses and steering yokes in entry number BZF-60075095, under HTSUS subheading 8432.90.0080 as duty free, and also advised Wanxiang that the correct tariff classification of crosses and steering yokes is under HTSUS subheading 8483.90.8040 at a duty rate of 2.8 percent ad valorem. Id.  Following the Notice of Action on July 1, 2009, Wanxiang continued to classify universal joints and parts and accessories of universal joints (including crosses, cross assemblies, yokes, caps, cups, bearing caps, and bearing kits) into the United States under subheading 8708.94.7510 at a duty rate of 2.5

percent <u>ad valorem</u>, subheading 8708.99.1600 duty free, subheading 8708.99.6890 at a duty rate of 2.5 percent <u>ad valorem</u>, subheading 8709.90.0000 duty free, and subheadings 8483.10.5000, 8483.90.0030, and 8483.90.0080, all duty free.  <u>Id.</u> ¶ 37.

Count 5 of the Complaint charges that Wanxiang's conduct after the Notice of Action on July 1, 2009, was grossly negligent.  <u>Id.</u> ¶ 70.  The Government seeks a penalty for gross negligence in the amount of $7,557,676.92, which represents four times the total loss of revenue of $1,889,419.23 for the universal joints and parts and accessories of universal joints entered after July 1, 2009, and until September 30, 2012.  <u>Id.</u> ¶ 71.  In the alternative, Count 6 charges that Wanxiang's conduct after the Notice of Action on July 1, 2009, was negligent.  <u>Id.</u> ¶ 73.  The Government seeks a penalty for negligence in the amount of $3,778,838.46, which represents two times the total loss of revenue of $1,889,419.23 for the universal joints and parts and accessories of universal joints entered after July 1, 2009, and until September 30, 2012.  <u>Id.</u> ¶ 74.

### E.      Counts 7–8: Universal Joints That Were Entered Under a Duty-Free Actual Use Provision for Agricultural Parts

Wanxiang also entered universal joints duty free as parts of agricultural machines under HTSUS Heading 9817, subheading 9817.00.6000, an actual use provision that is subject to the requirements of 19 C.F.R. §§ 10.133–139.  <u>Id.</u> ¶ 42.  The Complaint alleges that "Wanxiang was aware of" the relevant requirements in the <u>Code of Federal Regulations</u> at the time of the entry. <u>Id.</u> ¶ 43.

Count 7 charges that Wanxiang's conduct was grossly negligent.  <u>Id.</u> ¶ 76.  The Government seeks a penalty for gross negligence in the amount of $83,020.60, which represents four times the total loss of revenue of $20,755.15 for the agriculture machine parts.  <u>Id.</u> ¶ 77.  In the alternative, Count 8 charges that Wanxiang's conduct was negligent.  <u>Id.</u> ¶ 79.  The

Government seeks a penalty for negligence in the amount of $41,510.30, which represents two times the total loss of revenue of $20,755.15 for the agricultural machine parts.  Id. ¶ 80.

### F.      Count 9: Miscellaneous Parts

Finally, Wanxiang entered miscellaneous parts and accessories into the United States.  Id. ¶ 46.  Wanxiang classified these miscellaneous parts and accessories under several HTSUS subheadings, including subheadings 8432.90.0080, 8708.99.1600, and 8709.90.0000, all duty-free tariff provisions.  Id. ¶ 47.  The Complaint alleges that the entries are instead properly classifiable under HTSUS subheading 8483.90.8010 at a duty rate of 2.8 percent ad valorem, subheading 8708.50.5110 at a duty rate of 2.5 percent ad valorem, or subheading 8708.99.6890 at a duty rate of 2.5 percent ad valorem.  Id. ¶ 48.

Count 9 charges that Wanxiang's conduct was negligent.  Id. ¶ 82.  The Government seeks a penalty for negligence in the amount of $97,085.88, which represents two times the total loss of revenue of $48,542.94 for the miscellaneous parts and accessories.  Id. ¶ 83.

### III.     Procedural History

On January 17, 2018, Customs issued a pre-penalty notice to Wanxiang that CBP was contemplating issuing a demand for duties in the amount of $35,973,268.39 and a penalty in the amount of $77,157,756.08 for violation of 19 U.S.C. § 1592.  Id. ¶ 51.  Wanxiang responded to the pre-penalty notice on June 27, 2018.  Id. ¶ 52.  On April 11, 2019, Customs issued a notice to Wanxiang assessing a penalty in the amount of $66,190,766.98 for multiple negligent and grossly negligent violations of 19 U.S.C. § 1592, and demanding payment of $31,185,209.11 in lost revenue.  Id. ¶ 53.  Wanxiang has not paid the total amount of $97,375,976.09 in lost revenue and penalties that Customs has demanded.  Id. ¶ 55.

Seeking to collect lost revenue under § 1592(d) and assess penalties under § 1592(c), the Government timely filed this action. See Compl. Wanxiang filed the instant Motion to Dismiss the Complaint on October 12, 2022. See Def.'s Mot. to Dismiss; Def.'s Mem. of Law in Support of Def.'s Mot. to Dismiss, Oct. 12, 2022, ECF No. 12-1 ("Def.'s Br."). The United States filed a response on December 21, 2022, see Pl.'s Opp. to Def.'s Mot. to Dismiss, Dec. 21, 2022, ECF No. 15, to which Wanxiang filed a reply on February 3, 2023, see Def.'s Reply, Feb. 3, 2023, ECF No. 23. The court issued questions in advance of oral argument, see Ct.'s Qs. for Oral Arg., Apr. 7, 2023, ECF No. 26, to which the parties filed responses, see Pl.'s Resp. to Ct.'s Qs., Apr. 20, 2023, ECF No. 27; Def.'s Resp. to Ct.'s Qs., Apr. 20, 2023, ECF No. 28. The court invited parties to file submissions after oral argument on May 17, 2023, see Oral Arg., May 17, 2023, ECF No. 34, and both parties made such submissions on May 26, 2023, see Pl.'s Post Oral Arg. Br., May 26, 2023, ECF No. 35; Def.'s Letter to the Ct., May 26, 2023, ECF No. 36.

## JURISDICTION AND STANDARD OF REVIEW

The court has subject matter jurisdiction under 28 U.S.C. § 1582, which grants to the Court of International Trade "exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States . . . to recover a civil penalty under section 592 . . . of the Tariff Act of 1930." Id. § 1582(1).

Before the court is Wanxiang's Motion to Dismiss the Complaint for failure to state a claim under USCIT Rule 12(b)(6). See Mot. to Dismiss at 1. Identical to its FRCP analogue, USCIT Rule 12(b)(6) allows litigants to move to dismiss any or all claims for relief in a pleading for "failure to state a claim upon which relief can be granted." USCIT R. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Hartford Fire Ins. Co. v.

United States, 772 F.3d 1281, 1284 (Fed. Cir. 2014). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S.

at 556).

When considering a motion to dismiss, the court must accept well-pleaded factual

allegations in the Complaint to be true and draw all reasonable inferences in favor of the

nonmoving party. Hartford Fire, 772 F.3d at 1284. The court's factual review is usually limited

to the four corners of the Complaint but may also include "matters incorporated by reference or

integral to the claim, items subject to judicial notice, [and] matters of public record." A & D Auto

Sales, Inc. v. United States, 748 F.3d 1142, 1147 (Fed. Cir. 2014) (alteration in original) (citation

omitted).

## DISCUSSION

Wanxiang's challenges to the Complaint are grouped into two categories. First, seeking to

dismiss Counts 3 through 7 of the Complaint, Wanxiang argues that the Complaint fails to state a

§ 1592 claim with respect to its tariff classification of automotive parts and accessories for three

different reasons. Second, taking aim at Count 2 of the Complaint, Wanxiang contends that the

Complaint fails to state a § 1592 claim with respect to the WHA entries because Wanxiang did not

have fair notice that WHAs were subject to the TRB Order. The below table summarizes each

count and Wanxiang's corresponding defenses.

Upon consideration, none of Wanxiang's defenses support dismissal at this preliminary stage, and the court concludes that the Complaint's allegations are sufficient to plausibly establish relief under § 1592 for all nine counts.

| No. | Description of Count | Alleged Culpability | Amount/Penalty Demanded | Wanxiang's Defense |
|---|---|---|---|---|
| 1. | Deprivation of lawful duties under 1592(d) | Strict Liability | $31,185,209.11 | • No violation of § 1592 occurred |
| *Count Relating to WHAs (Count 2)* | | | | |
| 2. | Incorrect entry of WHAs covered by Tapered Roller Bearing Order | Negligence | $53,879,970.62 | • Lack of fair notice |
| *Counts Relating to Automotive Parts and Accessories (Counts 3–9)* | | | | |
| 3. | Incorrect entry of radial ball bearings and tapered roller bearings | Negligence | $1,204,204.64 | • A misclassification is not a false statement |
| 4. | Incorrect entry of universal joints and parts and accessories of universal joints before July 1, 2009 | Negligence | $3,368,808.32 | • A misclassification is not a false statement<br>• Classification under HTSUS 8708 was correct |
| 5. | Incorrect entry of universal joints and parts and accessories of universal joints entered after July 1, 2009 | Gross Negligence | $7,557,676.92 | • A misclassification is not a false statement<br>• Classification under HTSUS 8708 was correct<br>• Notice of Action cannot establish gross negligence |
| 6. | Incorrect entry of universal joints and parts and accessories of universal joints entered after July 1, 2009 | Negligence (alternatively from Count 5) | $3,778,838.46 | • A misclassification is not a false statement<br>• Classification under HTSUS 8708 was correct<br>• Notice of Action cannot establish negligence |
| 7. | Incorrect entry of entries of universal joints under a duty-free actual use provision for agriculture machine parts | Gross Negligence | $83,020.60 | • A misclassification is not a false statement |
| 8. | Incorrect entry of entries of universal joints under a duty-free actual use provision for agriculture machine parts | Negligence (alternatively from Count 7) | $41,510.30 | • A misclassification is not a false statement |
| 9. | Incorrect entry of miscellaneous parts | Negligence | $97,085.88 | • A misclassification is not a false statement |
| **Total Amount Demanded:** Assuming gross negligence on Counts 5 and 7 | | | $97,375,976.09 | |

#### I.      *The Complaint States a § 1592 Claim with Respect to Wanxiang's Tariff Classification of Automotive Parts and Accessories*

Wanxiang argues that various counts within Counts 3 through 9 fail to state a claim for three reasons. First, Wanxiang contends that alleged misclassifications, standing alone, cannot constitute false statements under § 1592 because Wanxiang's misclassifications were the result of bona fide disagreement over the law and not misstatements of fact. Second, Wanxiang claims that its classification for universal joints was correct as a matter of law and, therefore, cannot be a false statement. And third, Wanxiang urges the court to dismiss the charges of gross negligence and negligence premised on the Notice of Action from Customs because the Notice of Action was not prospectively binding on Wanxiang. The court considers and finds unpersuasive in turn all three contentions.

#### A.      *Counts 3 Through 9 State a Claim Because Misclassifications Can Constitute False Statements.*

Seeking to dismiss Counts 3 through 9, Wanxiang argues that the Complaint's allegations that Wanxiang misclassified the articles at issue in those counts cannot, without more, constitute false statements required for § 1592 liability. See Def.'s Br. at 39–44. Defendant insists that the tariff classifications asserted by Wanxiang in its entry paperwork are legal conclusions upon which reasonable minds can disagree, not statements of fact that constitute the "false statements and omissions in violation of 19 U.S.C. § 1592(a)" as alleged in the Complaint. Id. at 41–42, 44.

Wanxiang's argument hinges on the meaning of falsity in § 1592. As discussed above, pleading a § 1592 claim premised on an act, rather than omission, requires four elements: (1) the act; (2) falsity; (3) materiality; (4) culpability. See 19 U.S.C. § 1592(a)(1)(A). It is uncontested that misclassification qualifies as a "written . . . statement," see id., and that the Complaint

adequately pleaded the misclassifications as "material," see Def.'s Br. at 39–45; Def.'s Reply at 28. The precise question then is not whether the misclassification is more legal or factual in nature, but whether the Government can establish that Wanxiang's classification was "false" under § 1592.

"False" is undefined both in § 1592 and the agency's accompanying regulations. See 19 U.S.C. § 1592; 19 C.F.R. pt. 171, app. B(C). So the court turns to "its ordinary meaning." United States v. Sterling Footwear, 41 CIT __, __, 279 F. Supp. 3d 1113, 1128 (2017) (citing United States v. Rockwell Automation Inc., 30 CIT 1552, 1557, 462 F. Supp. 2d 1243, 1248 (2006)). A statement is "false" when it is "untrue," "deceitful," or "erroneous." False, Black's Law Dictionary (11th ed. 2019); see also Sterling Footwear, 217 F. Supp. 3d at 1128 (defining "false" in § 1592 as "untrue" or "not genuine; inauthentic"). And even if a statement is material and false, the statement must also have been the result of culpable intent—fraud, gross negligence, or negligence—in order to establish § 1592 liability. See 19 U.S.C. § 1592(a)(1); see also id. § 1592(a)(2) (noting further that "clerical errors or mistakes of fact are not violations . . . unless they are part of a pattern of negligent conduct").

A misclassification on the entry paperwork, standing alone, is a false written statement that may establish § 1592 liability. The act of declaring that an article is classified under a particular HTSUS subheading includes at least two component assertions: (1) a legal assertion about the proper meaning of the specific terms in the tariff provision, and (2) a factual assertion that the application of the facts to the law would justify a particular subheading as properly construed. See Franklin v. United States, 289 F.3d 753, 757 (Fed. Cir. 2002) (whereas "[t]he proper scope and meaning of a tariff classification term is a question of law," the question of "whether the goods at

issue fall within a particular tariff term as properly construed is a question of fact"). Whether the

first assertion is false is related to the meanings of "wrong" or "erroneous"; the importer unlawfully

construes the tariff provision. Whether the second assertion is false implicates the definitions of

"untrue" or even "deceitful"; the importer is misrepresenting the nature of the product or has failed

to correctly apply the law to a set of facts. One or both of those assertions may be at issue in any

given case where an alleged misclassification forms the basis for § 1592 liability.

Prior decisions of this court have similarly considered misclassifications to be false

statements under § 1592. See, e.g., United States v. Cruzin Cooler, LLC, 44 CIT __, __, 459 F.

Supp. 3d 1366, 1375 (2020) ("[A] misclassification of merchandise on Customs' entry

documentation establishes a false statement."); United States v. Six Star Wholesale, Inc., 43 CIT

__, __, 359 F. Supp. 3d 1314, 1317, 1319–21 (2019) (the defendant "falsely classif[ied] 27 entries

of wire hangers as 'clothes racks,'" "falsely indicat[ed] that no antidumping duties should be

assessed" by filing "01" type entries, and was at fault for "erroneous descriptions and classification

of the subject merchandise")[4]; Sterling Footwear, 279 F. Supp. 3d at 1135–37 (evaluating "whether

the undisputed facts demonstrate the falsity of the asserted classification" and concluding that "the

unrebutted evidence demonstrates the existence of a false statement; i.e., that the subject entries

were misclassified"); United States v. Int'l Trading Servs., LLC, 41 CIT __, __, 222 F. Supp. 3d

1325, 1332 (2017) (finding that "the classification of the entries under subheading 1701.99.0500

---

[4] Particularly analogous to the Complaint here, the complaint in Six Star Wholesale pleaded misclassification of polyethylene retail carrier bags ("PRCBs") without any other allegations of untrue factual descriptions in the Customs paperwork. See Compl. ¶¶ 14–15, Six Star Wholesale, 359 F. Supp. 3d 1314 (CIT filed Oct. 8, 2014). Reviewing a motion for default judgment, the court nonetheless found that the complaint was well pleaded and assessed penalties based in part on the misclassification of PRCBs. See Six Star Wholesale, 359 F. Supp. 3d at 1319, 1321–23.

constituted a false statement" because the entries were "not covered by the provisions of" an applicable general note in the HTSUS); United States v. Optrex Am., Inc., 32 CIT 620, 631–32, 560 F. Supp. 2d 1326, 1336–37 (2008) ("Customs has proven by a preponderance of the evidence that Optrex made material false statements or omissions . . . . During the period under review, Optrex classified LCD glass panels under HTSUS heading 8531, which the Federal Circuit has since declared the wrong classification for such devices."), appeal voluntarily dismissed, 329 F. App'x 264 (Fed. Cir. 2009). Wanxiang does not cite to, nor is the court aware of, a case where pleading falsity under § 1592 has required the narrower allegation that a statement of fact was untrue. See Def.'s Br. at 39–45; Def.'s Reply at 25–28.[5]

---

[5] Wanxiang appears to ground its interpretation of § 1592 being limited to misstatements of fact in § 1484, which states that an importer's "entry shall set forth such facts in regard to the importation as the Secretary may require." 19 U.S.C. § 1484(d)(1); see Def.'s Br. at 16–17. But Wanxiang cites no case for the proposition, nor does the court find it convincing, that because an importer's duty requires accurate statements of fact—which no party disputes—falsity must be limited to untrue statements of fact.

Wanxiang's citation to Fabrene, Inc. v. United States, 17 CIT 911 (1993), is unavailing for two reasons. See Def.'s Br. at 42. First, the statute in that case stated that Customs may reliquidate an entry to correct "a clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law." 19 U.S.C. § 1520(c)(1) (1988) (repealed 2004) (emphasis added). Unlike § 1592, § 1520 did not include the word "false" and expressly distinguished between mistakes of fact and erroneous constructions of law. Second, the complaint in that case alleged that if Customs had physically examined the sample of imported merchandise instead of relying on the NIS description, then it would have properly classified that merchandise. See Fabrene, 17 CIT at 914. But "Customs' reliance on the NIS description does not itself establish a mistake of fact," which was defined as "'a mistake which takes place when some fact which indeed exists is unknown, or a fact which is thought to exist, in reality does not exist'"; the complaint, therefore, failed to state a claim. Id. (emphasis added) (quoting C.J. Tower & Sons of Buffalo, Inc. v. United States, 68 Cust. Ct. 17, 22, 336 F. Supp 1395, 1399 (1972)). The court next reasoned that the misclassification by Customs in that case resulted from an error in the construction of the applicable law—another reason that the complaint failed to state a claim—but it did not hold that misclassifications always result from errors in law. See id.

At the root of Wanxiang's argument about falsity are well-founded concerns that reasonable disagreements in classification may still subject an importer to § 1592 liability. It warns that "[a]llowing the Government's case to proceed . . . would amount to a judicial rewriting of § 1592 to cover the declaration of wrong legal conclusions." Def.'s Reply at 27. Because § 1592 raises the specter of civil penalties against importers, Wanxiang is right to question the outer bounds of unlawful conduct. Two significant hurdles for the Government, however, keep the risk of regulatory overbreadth at bay.

First, the Government has the burden of proving that Wanxiang's classifications were actually false; put simply, that another HTSUS subheading must apply. See 19 U.S.C. 1592(e)(3)–(4) ("the United States shall have the burden of proof to establish all the elements of the alleged violation" in gross negligence cases, and to establish only "the act or omission constituting the violation" in negligence cases); see also, e.g., Sterling Footwear, 279 F. Supp. 3d at 1135–37 (false because of statements from Customs that the article was misclassified, the court's conclusion that one subheading clearly applied to the physical samples, and the determination that none of the defendant's proffered evidence raised a genuine issue of material fact); Int'l Trading Servs., 222 F. Supp. 3d at 1332 (false because the evidence established that the entries were not covered by the provisions of an HTSUS general note); Optrex Am., 560 F. Supp. 2d at 1337 (false because a Federal Circuit case had "defined the proper classification scheme for the company's LCDs").

---

Wanxiang's analogies to the doctrines of perjury, misrepresentation, and fraud, see Def.'s Br. at 42–44, are also inapplicable because those doctrines expressly require misstatements of fact. See United States v. Debrow, 346 U.S. 374, 376 (1953) (requiring "a false statement willfully made as to facts material to the hearing" under 18 U.S.C. § 1621); Restatement (Second) of Conts. § 159 (Am. L. Inst. 1981) ("A misrepresentation is an assertion that is not in accord with the facts."); id. §§ 161–162 (relying on that definition of misrepresentation to define fraudulent conduct). The more persuasive analogy is the False Claims Act, see infra note 6.

Second, the culpability element ensures that Wanxiang will not be liable for classifications based on reasonable differences in opinion. In this case, the Government has charged either negligence, see Compl. ¶¶ 64, 67, 73, 79, 82, for which Wanxiang must show that the material false statement did not "result[] from . . . the failure to exercise the degree of reasonable care and competence expected from a person in the same circumstances," 19 C.F.R. pt. 171, app. B(C)(1); or gross negligence, see Compl. ¶¶ 70, 76, for which the Government must show that the material false statement "result[ed] from an act or acts . . . done with actual knowledge of or wanton disregard for the relevant facts and with indifference to or disregard for the offender's obligations under the statute," 19 C.F.R. pt. 171, app. B(C)(2). And as Customs's own regulations make clear, an "unreasonable classification will be considered a lack of reasonable care (e.g., imported snow skis are classified as water skis)," which "may result in imposition of a section 592 penalty for fraud, gross negligence or negligence." Id. pt. 171, app. B(D)(6) (emphasis added).

That leads us to the broader point. Wanxiang's arguments about reasonable disagreement are actually not falsity arguments at all; they are better understood as defenses to the Government's allegations of its culpability. As discussed above, Customs regulations frame the question of reasonable versus unreasonable classification in terms of an importer's failure to exercise reasonable care. See id. pt. 171, app. B(D)(6). So, too, did a congressional report in even greater detail. A joint Senate committee report on the North American Free Trade Agreement Implementation Act, which revised provisions of § 1592, states that "the failure to follow a binding ruling is a lack of reasonable care," but that "an honest, good faith professional disagreement as to the correct classification of a technical matter shall not be considered to be lack of reasonable care unless such disagreement has no reasonable basis (e.g., snow skis are entered as water skis)." S.

Rep. No. 103-189, at 73 (1993) (emphasis added). And notably, courts interpreting the False Claims Act—a statute analogous to § 1592 because it authorizes civil penalties for false statements made to the Government—have slotted similar arguments regarding reasonable disagreement over legal ambiguity into the falsity, not culpability, element.[6] Any potential determination that Wanxiang is culpable for its alleged false statements will require a degree of culpability that exceeds reasonable disagreement between Wanxiang and Customs about which HTSUS subheading applies; but that has little to do with whether the classification that Wanxiang chose was indeed false.

In the factual allegations relevant to each of Counts 3 through 9, the Complaint pleads the HTSUS subheadings under which Wanxiang classified the automotive parts and accessories that it entered into the United States. See Compl. ¶¶ 30, 35, 37, 42, 47. And for each count, Government further pleads either the alternative classification that it alleges would have been proper (and, therefore, that it intends to prove must apply), see id. ¶¶ 31, 36, 48, or a more specific reason as to why Wanxiang's proposed classification does not apply, see id. ¶¶ 42–43. Those same facts and legal conclusions substantiate the Government's allegations that Wanxiang either failed to exercise reasonable care, see id. ¶¶ 64, 67, 73, 79, 82, or acted with actual knowledge of or in wanton disregard of the applicable laws, see id. ¶¶ 70, 76. Those allegations establish falsity and

---

[6] See 31 U.S.C. § 3729. The FCA states, in the part most analogous to § 1592, that "any person who . . . knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . . is liable to the United States Government for a civil penalty." Id. § 3729(a)(1). But the argument "that a defendant cannot be held liable for failing to comply with an ambiguous term[] go[es] to whether the government proved knowledge," not whether the statement was false. United States ex rel. Purcell v. MWI Corp., 807 F.3d 281, 287 (D.C. Cir. 2015); see also United States ex rel. Drakeford v. Tuomey, 792 F.3d 364, 384 (4th Cir. 2015); United States v. Bourseau, 531 F.3d 1159, 1164 n.2 (9th Cir. 2008). So, too, here. Wanxiang's core argument about the reasonableness of its classifications goes to culpability, not falsity.

culpability "above the speculative level on the assumption that all the [factual] allegations in the complaint are true." Twombly, 550 U.S. at 555 (citation and footnote omitted). The Complaint adequately pleads § 1592 claims for the automotive parts, and Wanxiang's arguments about reasonable disagreement are unpersuasive at this stage and better suited for later in the litigation.

> **B.      Counts 4 Through 6 State a Claim Because Wanxiang Cannot Establish That Its Misclassification for Universal Joints Was Not False as a Matter of Law.**

Wanxiang also argues that the Complaint failed to state a claim for Counts 4 through 6 because the universal joints imported by Wanxiang are not properly classified as "Parts of Universal Joints" under HTSUS heading 8483, as claimed by Customs, but rather under HTSUS heading 8708. See Def.'s Br. at 45–48. Reframing the argument in terms of the § 1592's elements, Wanxiang effectively contends that the classifications alleged in Counts 4–6 was not false as a matter of law because HTSUS heading 8483 does not apply. Id. This challenge, too, is premature.

Even if the court were to accept Wanxiang's legal reasoning,[7] its proposed classification requires the court to draw factual inferences in its favor. Wanxiang argues that Note 2(e) to HTSUS Section XVII provides that "the expressions 'parts' and 'parts and accessories' do not apply to . . . articles of heading 84.81 or 84.82 or, provided they constitute integral parts of engines or motors, articles of heading 84.83," Def.'s Br. at 46 (quoting HTSUS Section XVII, Note 2), and further cites to Customs decisions making the distinction on the basis of whether the parts "constitute integral parts of engines or motors," id. at 46–47 (citing NY N198080 (Jan. 13, 2012)

---

[7] The court expresses no view on the legal merits at this stage. The Government counters that Wanxiang ignored the CIT's decision in Mitsubishi Elecs. Am., Inc. v. United States, 19 CIT 378, 882 F. Supp. 171 (1995), Customs's rulings and informed compliance publications, and the relevant terms of the HTSUS, when it allegedly misclassified its parts and accessories of universal joints. See Pl.'s Br. at 33–34.

(clutch release bearings); NY F81211 (Jan. 6, 2000) (suspension strut bearings); NY C82026 (Jan. 29, 1998) (strut component)).  But nowhere does the Complaint allege that the universal joints are exclusively automotive parts or not part of an engine or motor.  Compare Def.'s Br. at 47 ("The universal joints . . . at issue in this case are designed and used exclusively as parts of automobiles—an undisputed fact in this case." (emphasis added)), with Compl. ¶ 8 ("This action involves Wanxiang's importation of universal joints and parts thereof . . . , wheel hub assemblies . . . , tapered roller bearings, and other parts and accessories of automobiles . . . into the United States.").

Wanxiang's own legal theory relies on the premature factual finding that its universal joints are "clearly not a part of an engine or a motor."  Def.'s Br. at 47 (emphasis omitted).  But the court declines to do so where, in considering a motion to dismiss, it must draw plausible inferences in favor of the Government.  Wanxiang's argument is unsuccessful at this stage.

### C.      Counts 5 and 6 State a Claim Because Failure to Follow a Notice of Action from Customs Plausibly Establishes Gross Negligence and Negligence.

Wanxiang further argues that the Complaint fails to state claims for gross negligence and negligence in Counts 5 and 6 because Customs's Notice of Action "does not establish a legal requirement that an importer must follow for future entries."  Def.'s Br. at 49.  The court nonetheless concludes that the Complaint states a claim for Counts 5 and 6.

The Notice of Action goes to show breach, not duty.  The allegation that Wanxiang continued to misclassify entries after receiving a Notice of Action regarding universal joints and parts of universal joints gives rise to a plausible conclusion that Wanxiang's subsequent misclassifications "result[ed] from an act or acts . . . done with actual knowledge of or wanton disregard for the relevant facts and with indifference to or disregard for the offender's obligations

under the statute." 19 C.F.R. pt. 171, app. B(C)(2); see also Sterling Footwear, 279 F. Supp. 3d at 1139 (concluding that the Government demonstrated gross negligence in showing, by a preponderance of the evidence, that "Sterling failed to correct its errors when pointed out by CBP and, instead, continued to make entries using the incorrect classification"). And if the Notice of Action plausibly establishes grossly negligent conduct, it also plausibly establishes negligent conduct, which is a lower level of culpability.

Wanxiang's argument that the Notice of Action is entry-specific and does not create a prospectively binding obligation is beside the point. Generally, "notices of action are intended to serve as entry-specific notifications." Int'l Custom Prods., Inc. v. United States, 748 F.3d 1182, 1187 (Fed. Cir. 2014). The duty underlying the Government's gross negligence and negligence claims, however, is not rooted in the Notice of Action, but in § 1484, which requires importers use "reasonable care" in filing with CBP "the declared value, classification and rate of duty applicable to the merchandise," and "such other information as is necessary to enable the Customs Service to . . . properly assess duties on the merchandise." 19 U.S.C. § 1484. There is therefore no need for "a legal duty to consult with Customs regarding the classification of the universal joint parts in this case" to find that there was breach under § 1592. Def.'s Br. at 50.

Insofar as Wanxiang also contends that an alleged misclassification following a Notice of Action cannot establish breach under 19 U.S.C. § 1592, that argument, too, is unsupported. To dismiss Counts 5 and 6 would effectively foreclose the Government's ability to use relevant yet nonbinding statements by Customs to allege and eventually prove gross negligence or negligence. That overbroad result is not only devoid of any support in the statutory or regulatory text but also inconsistent with this court's prior case law. See Sterling Footwear, 279 F. Supp. 3d at 1138–39

& n.36 (finding that the defendant's instruction to its broker to enter the same classification after Customs had issued two notices of action established, in part, the defendant's "indifference to or disregard for its statutory obligations" on motion for summary judgment); cf. Optrex Am., 560 F. Supp. 2d at 1337 (reasoning that even though certain entries before the court were not at issue in a relevant classification judgment by the Federal Circuit, those entries had "the same technical characteristics as those covered by the judgment" and were therefore subject to the Federal Circuit's holding).

Questions about the Notice of Action's entry-specific nature is likely relevant for a factfinder when evaluating whether Wanxiang breached its legal duty as an importer in a grossly negligent or negligent manner. See 19 C.F.R. pt. 171, app. B(C)(1)–(2). But, tasked here with evaluating the sufficiency of the Complaint, the court concludes that the Government has adequately pleaded gross negligence and negligence in Counts 5 and 6.

II.     **The Complaint States a Claim That Wanxiang Negligently Violated § 1592 with Respect to Its Entries of WHAs**

Wanxiang also raises a fair notice defense to Customs's initiation of § 1592 administrative proceedings and this lawsuit that followed with regards to the WHA entries. Defendant argues that "the Commerce Department did not publish its decision that WHAs were considered to be within the scope of the antidumping duty order on TRBs until December 6, 2011," which date was after all of Wanxiang's WHA entries for which the Government seeks to collect antidumping duties and penalties. Def.'s Br. at 2 (emphasis omitted); Compl. attach. A at 1–3, July 13, 2022, ECF No. 2-1 (showing entries from June 24, 2011, to November 30, 2011); see also Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From the People's Republic of China: Final Results of the Expedited Third Sunset Review of the Antidumping Duty Order, 76 Fed. Reg.

76143, 76143 (Dep't Com. Dec. 6, 2011) ("On April 18, 2011, in response to an inquiry from New Trend Engineering Limited ('New Trend'), the Department ruled that . . . New Trend's splined and non-splined wheel hub assemblies without antilock braking system ('ABS') elements are included in the scope of the order."). Grounding its argument in principles of fair notice in administrative law, Wanxiang argues that the Complaint fails to state a claim (1) "because the legal obligation to enter WHAs as subject to the TRB [O]rder did not exist until December 6, 2011," and (2) because Wanxiang "should not be penalized for failing to exercise reasonable care in meeting a legal responsibility that was not communicated to the trade community at the time these entries were filed." Def.'s Br. at 4 (emphasis omitted).

Fair notice is an essential safeguard against overbroad administrative action. "It is well established that '[i]n the absence of notice—for example, where the regulation is not sufficiently clear to warn a party about what is expected of it—an agency may not [impose] civil or criminal liability.'" Fuji Photo Film Co. v. Int'l Trade Comm'n, 474 F.3d 1281, 1292 (Fed. Cir. 2007) (alteration in original) (quoting Gen. Elec. Co. v. EPA, 53 F.3d 1324, 1328–29 (D.C. Cir. 1995), as corrected (June 19, 1995)). "The requirement therefore reflects the broader due-process principle that before an agency may enforce an order or regulation by means of a penalty or monetary sanction, it must 'provide regulated parties fair warning of the conduct [the order or regulation] prohibits or requires.'" Mid Continent Nail Corp. v. United States, 725 F.3d 1295, 1300–01 (Fed. Cir. 2013) (alteration in original) (quoting Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 156 (2012)); see also Tai-Ao Aluminum (Taishan) Co. v. United States, 983 F.3d 487, 494–95 (Fed. Cir. 2020) (holding that Commerce could not suspend liquidation of entries before adequate notice was given that importers' products would be subject to an anti-

circumvention inquiry); <u>United Steel & Fasteners, Inc. v. United States</u>, 947 F.3d 794, 801 (Fed. Cir. 2020) (holding that Commerce exceeded its regulatory authority in retroactively suspending liquidation on entries dated before a scope inquiry is initiated); <u>Sunpreme Inc. v. United States</u>, 946 F.3d 1300, 1319 (Fed. Cir. 2020) ("When Commerce rules that a product falls within the scope of an order, but 'there has been no [previous] suspension of liquidation,' a new suspension must be ordered beginning only 'on or after the date of initiation of the scope inquiry.'" (quoting 19 C.F.R. § 351.225(l)(3))); <u>Trans Tex. Tire, LLC v. United States</u>, 45 CIT __, __, 519 F. Supp. 3d 1289, 1304 (2021) ("[A]dequate notice is essential where Commerce attempts to apply retroactive duties.").

Unlike those fair notice cases, however, the fair notice argument here is one degree removed from the law being applied. Wanxiang does not dispute that it had fair notice of the relevant provisions of 19 U.S.C. § 1592; it insists instead that a lack of fair notice regarding the <u>TRB Order</u>'s applicability prevents any finding of negligence—that Wanxiang's conduct related to the WHAs cannot have been a failure to exercise reasonable care.[8] <u>See</u> Def.'s Br. at 4. But the negligence inquiry of § 1592 sweeps broader than only whether an antidumping order was clear. In <u>Star Pipe Products v. United States</u>, Commerce instructed Customs to "continue to suspend liquidation" after it had found that importer Star Pipe's Joint Restraint Kits were within the scope of an antidumping order; Star Pipe challenged Commerce's instruction as improperly assessing

---

[8] Wanxiang also appears to frame the question of fair notice as one of "legal obligation" or duty under § 1592. <u>See</u> Def.'s Br. at 4. But that argument, once again eliding the difference between duty and breach, is summarily disposed for the same reasons as in subsection I.C. The potential ambiguity of whether the <u>TRB Order</u> covered Wanxiang's WHAs before December 6, 2011—a factual question better reserved for later stages of litigation, as discussed below—does not somehow vitiate an importer's duty of reasonable care under § 1592, which is rooted in § 1484. <u>See</u> <u>supra</u> pp. 24–25.

duties on imports before the initiation of the scope proceedings. 981 F.3d 1067, 1078 (Fed. Cir. 2020). In holding Star Pipe's challenge moot because the pre-initiation entries were liquidated with no duties, the Federal Circuit reasoned that:

> Even if, as Star Pipe demands, Commerce's liquidation instruction were clarified to state that it did not extend to pre-initiation entries, that would not impact or prevent CBP from pursuing an enforcement action under § 1592. 19 C.F.R. § 351.225(l)(3) only limits Commerce's authority to assess duties in the context of a scope inquiry; that regulation does not restrict CBP's authority under § 1592 to assess penalties for fraudulent or negligent violations. Regardless of Commerce's instruction to CBP to suspend and assess liquidation in connection with Star Pipe's scope inquiry, CBP may independently determine that Star Pipe was negligent or fraudulent in its failure to pay duties on its Joint Restraint Kits, even if those Joint Restraint Kits were imported prior to the initiation of the scope inquiry.

Id. at 1079 (emphasis added).

Put simply, Customs may still assess that Wanxiang failed to exercise reasonable care in navigating regulatory uncertainty. Star Pipe coheres with the other case law; none of the cases that Wanxiang cites apply a statute like § 1592, which, in its inquiry about whether an importer exercised reasonable care, considers a scope of conduct broader than the conduct which is being allegedly retroactively targeted. Without reaching a particular outcome at this preliminary stage where only the Complaint is before the court, the court notes that Wanxiang, confronted with regulatory uncertainty, could have: requested a public version of Commerce's preliminary determination in the New Trend scope ruling, see 19 C.F.R. § 351.104(b); sought a pre-importation classification ruling or a binding ruling letter from CBP headquarters to ascertain the correct classification of the WHAs; sought its own scope ruling from Commerce to determine whether its WHAs were covered by the TRB Order; or consulted a customs expert to whom it had provided complete and accurate information. See 19 C.F.R. pt. 171, app. B(D)(6) (defining "reasonable care" to include responsibilities such as "taking measures that will lead to and assure the

preparation of accurate documentation, and determining whether any applicable requirements of law with respect to these issues are met" (emphasis added)); S. Rep. No. 103-189, at 73 (using the same language and indicating the Senate Committee's belief that "seeking guidance from the Customs Service" or "consulting with a customs broker" are "aids for proper compliance"). In listing these possible actions, the court does not intimate a view as to whether they occurred or whether the failure to take those steps is justified. But to hold for Wanxiang now would bar the Government from enforcing § 1592 against importers that negligently fail to correctly identify their entries, so long as those importers show that there was some uncertainty in the applicable classification. That result could encourage gamesmanship in classifying entries and absolve importers from exercising reasonable care in taking the appropriate actions with Customs and Commerce to clarify the classification applicable to their entries.

The path to negligence in this case, therefore, must be particular to the regulatory environment at the time of Wanxiang's entries. Determining negligence here would require a factfinder to consider, among other potential evidence, information describing the WHAs that Wanxiang entered into the United States,[9] statements by Customs and Commerce about the TRB Order's applicability to WHAs that Wanxiang was actually or constructively aware of,[10] and

---

[9] Wanxiang explains the differences between WHAs and TRBs in its briefing. See Def.'s Br. at 6–9; see also supra note 1.

[10] Wanxiang has identified the following public statements by Commerce and Customs that, in its view, support its claim that alternative classification of WHAs as not included by the TRB Order was reasonable before December 6, 2011.

- Notice of Scope Rulings, 76 Fed. Reg. 31301, 31302 (Dep't Com. May 31, 2011) (noting that New Trend had filed a scope request on "whether certain wheel hub units are within the scope of the antidumping duty order" and that there was a "preliminary ruling [on] December 13, 2010," without noting its outcome).

efforts by Wanxiang to understand and apply the law at the time.[11]  And, of particular importance

considering the due process concerns in this case, Wanxiang's contentions about Commerce's

- Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, from the People's Republic of China, 76 Fed. Reg. 3086, 3087 (Dep't Com. Jan. 19, 2011) (covering "shipments of tapered roller bearings and parts thereof, finished and unfinished, from the PRC; flange, take up cartridge, and hanger units incorporating tapered roller bearings; and tapered roller housings (except pillow blocks) incorporating tapered rollers, with or without spindles, whether or not for automotive use").

- Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, From the People's Republic of China: Preliminary Results of the 2008–2009 Administrative Review of the Antidumping Duty Order, 75 Fed. Reg. 41148, 41149 (Dep't Com. July 15, 2010) ("For the purposes of these preliminary results, because the Department has not yet determined whether wheel hub assemblies are covered by the scope of the order on TRBs, the Department will continue to base its antidumping margin calculation on New Torch's original U.S. sales database, which does not include wheel hub assemblies.").

- Letter from E. Begnal, Dep't of Com., re: Scope Inquiry (Tapered Roller Bearings) at 1 (June 15, 2010) ("The Department finds that it cannot determine whether New Trend's wheel hub assemblies should be excluded from the scope of the Order based solely upon New Trend's application for a scope clarification and the descriptions of the merchandise referred to in 19 CFR § 351.225(k)(1).").

- N.Y. Ruling Letter 818084 (Feb. 7, 1996) ("It is the opinion of this office that the subject wheel hub assemblies would not be subject to antidumping duties under the current Department of Commerce investigation on tapered roller bearings from China, as published in the Federal Register on June 15, 1987."); see also N.Y. Ruling Letter N137737 (Jan. 6, 2011); Customs HQ Ruling Letter H013123 (Apr. 14, 2008); N.Y. Ruling Letter N022275 (Feb. 6, 2008); N.Y. Ruling Letter N018286 (Nov. 2, 2007); N.Y. Ruling Letter M87799 (Nov. 15, 2006); N.Y. Ruling Letter I85202 (Aug. 20, 2002); N.Y. Ruling Letter G82534 (Oct. 10, 2000); N.Y. Ruling Letter 855471 (Sept. 10, 1990).

[11] In addition to the actions listed above, see supra pp. 29–30, Wanxiang could have requested from Commerce a paper copy of the actual public version of the preliminary scope ruling. See 19 C.F.R. § 351.104(b).  Moreover, it is possible that a request for public records of the preliminary ruling in May 2011 would have revealed Commerce's final ruling, dated April 18, 2011, which definitively stated that WHAs are within the scope of the TRB Order.  See Final Results of the

procedural deficiencies are also relevant to the determination of whether Wanxiang exercised reasonable care.[12]

At the motion to dismiss stage, the court concludes that the Complaint sufficiently pleads a negligent violation of § 1592 in Count 2. The Government specifies the entries at issue by referencing an attachment, see Compl. ¶ 20 & attach. A at 1–3, and alleges three material false statements or omissions: Wanxiang's identification of the entries as "01" consumption entries rather than "03" antidumping entries, see id. ¶ 23; Wanxiang's omission of the antidumping case number, see id. ¶ 24; and Wanxiang's classification of the entries under HTSUS heading 8708, see id. ¶ 26. The Complaint further pleads that those material false statements and omissions amounted

_____

Expedited Third Sunset Review of the Antidumping Duty Order, 76 Fed. Reg. at 76143. The court, once again, does not express a view at the pleadings stage as to whether Wanxiang took or should have taken these steps.

[12] First, Wanxiang states that it should have been included on the "scope service list"—a list of entities that Commerce is required by regulation to notify—of the New Trend scope request proceedings. See Def.'s Br. at 23 & ex. 2 (citing 19 C.F.R. § 351.225(e)–(f), (n)). Had Wanxiang been on the scope service list, it would likely have received actual notice of Commerce's final determinations in April 2011 that WHAs were covered by the TRB Order. See 19 C.F.R. § 351.225(e) (2011) (requiring notice to the "scope service list of the initiation of a scope inquiry" that cannot be resolved solely on the (k)(1) factors); id. § 351.225(f)(3) (requiring notice to the "scope service list . . . of the preliminary scope ruling"); id. § 351.225(f)(4) (requiring notice to the "scope service list . . . of the final scope ruling"). The C.F.R. defines "scope service list" to "include all persons that have participated in any segment of the [antidumping or countervailing duty] proceeding." Id. § 351.225(n).

Second, Wanxiang argues that Commerce's delayed Federal Register notice in May 2011 merely stated that a preliminary determination had been reached without expressly mentioning the outcome. See Def.'s Reply at 17–20. Wanxiang could have taken action to retrieve the publicly available copy of that preliminary determination. See supra note 11. But if Wanxiang can factually establish that it was entitled to actual notice via the scope service list, notice via the Federal Register would possibly be "insufficient in law," Camp v. U.S. Bureau of Land Mgmt., 183 F.3d 1141, 1144 (9th Cir. 1999) (applying 44 U.S.C. § 1507), though likely still relevant to a factfinder's overall assessment.

to a failure to "exercise reasonable care," see id. ¶ 61, and that Wanxiang is liable to the United States for penalties representing two times the total loss of antidumping duties for the WHAs, see id. ¶¶ 25, 28, 62.

Accepting the Complaint's factual assertions as true and construing any reasonable inferences in Plaintiff's favor, the court concludes that the Complaint adequately states a § 1592 claim with regards to Wanxiang's WHA entries. Because § 1592 assesses whether Wanxiang exercised reasonable care in navigating the regulatory environment at the time of its entries, the potential fair notice issues with the TRB Order do not categorically preclude § 1592 liability. But because Wanxiang's fair notice argument is one that may negate the Government's allegation that Wanxiang "did not exercise reasonable care" in entering WHAs, see Compl. ¶ 61, it may be pleaded as a negative defense in the Answer, see USCIT R. 12(h)(2).

## CONCLUSION

For the foregoing reasons, the court concludes that the Complaint states a claim for Counts 1 through 9.[13] Wanxiang's Motion to Dismiss is denied. Per USCIT Rule 12(a)(2)(A), Wanxiang must serve an answer within fourteen days after notice of this opinion.

**SO ORDERED.**

/s/      *Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated: August 16, 2023
        New York, New York

---

[13] Because the court holds that the Complaint states a claim for Counts 2 through 9, which means that each of those Counts is premised on a plausible violation of § 1592(a), Count 1 is also sufficiently pleaded for its full amount demanded. See 19 U.S.C. § 1592(d) (requiring only "a violation of subsection (a) . . . whether or not a monetary penalty is assessed").